Frederick JACOBS *v.* STATE of Arkansas

CR 95-808                                         939 S.W.2d 824

Supreme Court of Arkansas
Opinion delivered March 3, 1997

*Steven R. Davis*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. The appellant was convicted of capital murder and sentenced to life imprisonment without the possibility of parole. Because it has proved impossible to reproduce an adequate record of the proceedings below, we are left with no choice but to remand the case for a new trial.

On October 16, 1993, Shelia Lambert was shot to death outside of her trailer in Monticello, Arkansas. Two days later, her boyfriend, Frederick Jacobs, was taken into custody and gave a detailed statement confessing to the crime. On November 15, 1993, Jacobs was charged with capital murder. The case was eventually set for trial to begin on December 13, 1994, with a disposition hearing scheduled for November 21, to take up pretrial motions.

Jacobs's trial counsel, G.B. "Bing" Colvin III, filed a number of pretrial motions. Among other things, Jacobs challenged the constitutionality of the Arkansas death penalty procedure and moved to prohibit death qualification of the jury. Jacobs also moved to suppress his statement and to prevent the submission of aggravating circumstances to the jury that were completely unsupported by any evidence. While these motions are contained in the record, the pretrial hearing on the motions and the trial court's rulings are not in the record.

The case proceeded to trial on December 13, 1994, and continued for three days. On December 15, 1994, the jury convicted Jacobs of capital murder and sentenced him to life imprisonment without parole. All of the proceedings, including both the guilt and sentencing phases of trial, cannot be found in the record.

The trial court appointed Robert Remet to represent Jacobs during his appeal. On January 10, 1995, Jacobs filed a notice of appeal that designated the entire record, and a "motion to extend

filing time" with the trial court which requested a seven–month period in which to lodge the record. The trial court granted this motion. The State also filed a notice of cross–appeal with the trial court, challenging certain evidentiary rulings of the trial court regarding aggravating circumstances.

Val Dixon–Sims was the court reporter who reported all of the proceedings in the Jacobs case. On July 3, 1995, Dixon–Sims mailed a letter to Remet and the circuit clerk informing them that the storage room where she kept tapes, notes, and exhibits was vandalized on January 17, 1995. She further wrote that a large portion of the tapes and notes from the Jacobs case were destroyed.

Jacobs petitioned this court for a writ of certiorari to complete the record. On September 18, 1995, we denied the writ, holding that the trial court erred in granting Jacobs an extension to file the transcript without a hearing or proof that the transcript was ordered. *Jacobs v. State*, 321 Ark. 561, 906 S.W.2d 670 (1995) (per curiam).

Stephen Davis was then appointed to represent Jacobs on December 4, 1995, replacing Remet. Jacobs subsequently filed a "motion for an evidentiary hearing" with the trial court. Among other things, Jacobs requested that the trial court make certain findings with respect to the transcript, and that a new trial be granted if the transcript could not be reconstructed. This hearing was held on January 30, 1996.

At the hearing, Dixon–Sims testified that she reported Jacobs's entire trial using the "Stenomask" method, and that she also made a backup recording. She said that she received Jacobs's notice of appeal shortly after January 10, 1995, and that she understood that he wished to designate all of the proceedings.

On the morning of January 17, she discovered that her storage room had been vandalized, leaving her tapes, exhibits, and other trial materials strewn over her yard and carport. It had rained the night before and many of the materials were wet. When asked how many tapes were made of the Jacobs case, she recalled that there were about twenty. However, she only brought ten tapes to the hearing. She said that those ten tapes were the

ones prepared from a tape recording of the live proceedings, and that the other ten were made from the Stenomask. According to Dixon-Sims, the ten tapes from the Stenomask were still in her storage space.

After the incident, Dixon-Sims attempted to listen to the tapes, and could not hear what was being said. She testified that the condition of the tapes made it impossible for her to prepare a transcript from them. She also suggested that the prosecuting attorney had contacted the FBI in an effort to enhance the tapes.

Colvin testified as to his general recollection of the proceedings in the Jacobs case. He said that the pretrial hearing on his pretrial motions was reported. He also recalled at least one motion for a mistrial during the course of the trial. Colvin had ten pages of handwritten trial notes that were introduced into evidence. When asked whether he thought he could fairly reconstruct a record of trial from the notes, he responded in the negative. Given the length of the trial and the number of motions and objections, Colvin did not think that a fair record of the proceedings could be produced without a verbatim transcript.

Following the January 30 hearing, the trial court entered an order on February 9. The trial court found that the trial record could not be reconstructed at the time. He further granted the State sixty days in which to determine whether the court reporter's tapes could be enhanced.

On May 8, 1996, Jacobs filed a motion for belated appeal with this court, which we granted. *Jacobs v. State*, 325 Ark. 30, 922 S.W.2d 344 (1996) (per curiam). We additionally directed the trial court to order a licensed court reporter to transcribe as much of the tapes as possible, "in an attempt to see if a sufficient record can be obtained, so omitted portions can be reconstructed by the court and the parties." *Id.*

On July 2, 1996, the trial court held another evidentiary hearing on the matter. According to the written report prepared by the FBI expert who analyzed the tapes, the tapes could not be enhanced. It was also her opinion that gaps in the tapes were caused by a mechanical failure in one of the court reporter's

microphones. Portions of at least one tape were clearly audible, but after a short period of time, the quality would diminish, resulting in gaps where no sound could be heard. Additionally, it was revealed that the ten tapes prepared from the open microphone were the only tapes of the proceedings in the Jacobs case. The ten tapes from the Stenomask itself either did not exist or had not been produced.

The trial court proceeded to listen to the tapes, and entered an order finding that no more than ten percent of the tapes were audible. Moreover, the audible portions were sporadic and inconsistent. According to the trial court, audible portions would begin when the court microphone was repositioned when different people began to speak. However, these portions would last no more than five minutes. The court further found that the original Stenomask tapes had not been produced. The trial court concluded that reconstruction of the record for purposes of an appeal was impossible.

Jacobs now brings the present appeal, and argues that he is entitled to a new trial because of the lack of a trial transcript. Jacobs argues the denial of his motion to suppress and an alleged comment by the State concerning his failure to speak as possible substantive errors in the proceedings. He also challenges the legality of his initial arrest.

The trial court has an affirmative duty to see that the court reporter performs satisfactorily in order to provide an adequate appellate record. *See Jacobs v. State*, 321 Ark. 561, 906 S.W.2d 670 (1995) (per curiam); *Bell v. State*, 296 Ark. 458, 757 S.W.2d 937 (1988). In *Ward v. State*, 321 Ark. 659, 906 S.W.2d 685 (1995) (per curiam), this court reversed a death sentence and remanded for a new trial on sentencing where there were numerous errors in the transcript of the sentencing hearing and subsequent efforts to settle the record were unsuccessful. We observed that "[i]f a record of trial is insufficient to permit a full review of the proceedings from which an appeal has been taken, we have no alternative but to reverse and remand." *Id.* (citing *Holiday Inns, Inc. v. Drew*, 276 Ark. 390, 635 S.W.2d 252 (1982)). In a civil case where portions of the record could not be reproduced due to

a mechanical failure in the reporter's recording device, this court stated that when the record cannot be settled pursuant to Ark. R. App. P.—Civ. 6, reversible error exists. *Holiday Inns, Inc. v. Drew*, 276 Ark. 390, 635 S.W.2d 252 (1982).

In the present case, attempts to reconstruct or settle the record pursuant to Ark. R. App. P.—Civ. 6 have failed. Moreover, our concerns are heightened where, as here, the appeal involves a criminal case where a life sentence without parole has been imposed. Our rules require us to examine the record for all errors prejudicial to the defendant in such cases. Ark. Sup. Ct. R. 4-3(h). Without an adequate appellate record, such a review is impossible. We are left with no choice but to reverse the conviction and remand the case for a new trial.

Jacobs also contends that the Double Jeopardy Clause prohibits the State from seeking the death penalty in his subsequent retrial. Jacobs primarily relies on *Bullington v. Missouri*, 451 U.S. 430 (1981). Given that Jacobs has not yet been retried, the issue is not properly before this court for our review.

Reversed and remanded.