Charles Allen McGEHEE *v.* STATE of Arkansas

CR 95-368                                        943 S.W.2d 585

Supreme Court of Arkansas
Opinion delivered May 5, 1997

*William M. Howard, Jr.*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This appeal emanates from a judgment of conviction for capital murder and a sentence of life without parole. The appellant, Charles Allen McGehee, and his co-defendant, Joseph O'Neal, were tried together in a seven-day trial with two separate juries deciding the fate of the two men. McGehee contends that the evidence sustaining his conviction was insufficient and that the gaps in the transcribed record of the trial and attendant hearings deprives this court of full review. We agree on the second point, and we reverse and remand for a new trial.

On May 10, 1993, McGehee and Joseph O'Neal were charged with capital felony murder in connection with the death of Louisa M. Johnson, who was age 92. Robbery and burglary were designated as the predicate felonies, but the information was later amended to include rape as an underlying felony.

The facts of the case are taken from trial testimony. On April 20, 1993, at 8:17 a.m. Dermott Chief of Police Jerry Melton responded to a call at the victim's home. The call had been placed by a home health-care nurse, Bonnie Jordan. Melton testified that the victim's house was in disarray. He said that Mrs. Johnson was found under a pile of quilts and cushions. Only her legs were visible. During his examination of the premises, Melton discovered that three telephone lines outside of the house had been cut. He also found a window with a cut and torn screen. He further found two cans of malt liquor with pink napkins around them on the steps to the back porch of the house. Toward the back of the house, there was a television set placed on the corner of the deep freeze.

Melton told the jury that Johnson was lying face down with her hands tied behind her back with a necktie and her feet tied at the ankles, also with a necktie. He stated that it appeared as though the blanket had been wrapped around her head. She was wearing a nightgown, apron, and white underwear. The white underwear was torn on the back side, and the back of the nightgown was tucked inside the underwear. Melton testified that one of the bedrooms had been ransacked. He further testified that there was a purse in the living room floor that had been emptied. He added that a billfold had been taken from the purse, and it too was lying on the floor. The malt liquor cans and the pink napkins were collected and sent to the State Crime Lab for analysis. He later learned through his investigation that the pink napkins like the ones found with the malt liquor cans had come from a local nightclub called Rose's Cafe. The owner of the nightclub gave Melton the name of "Ba-Ba" as a suspect. Melton knew that Ba-Ba was the street name for Joseph O'Neal.

Sergeant Garland McAnally of the Arkansas State Police testified that Chief Melton asked him to take a statement from O'Neal, which he did on April 21, 1993. The written statement was read into evidence at trial. In the statement, O'Neal told how he and "Bosco" (McGehee) were drinking together on the night of April 19, 1993. They bought some crack cocaine. O'Neal then went into Rose's Cafe and bought two cans of beer. He got napkins to wrap around the beer cans. He and McGehee then

walked up the street and smoked their crack. They ended up finishing their crack, while sitting on Mrs. Johnson's back doorstep.

Next, according to O'Neal's statement, McGehee asked to borrow O'Neal's knife. O'Neal then observed McGehee cutting the window screen to the house. McGehee came around and opened the screen door and kicked the wooden door open. O'Neal stated that McGehee held Mrs. Johnson in the living room while he searched the house for money. He told McGehee not to let her see his face because she would recognize him. O'Neal looked through Johnson's purse in the living room. He recovered eighty cents from a change purse. O'Neal stated that before he left the room he saw McGehee with his hand underneath the victim's dress. He stated that McGehee tied the victim and that after they left McGehee had a $20 bill. After leaving, the two men went in search of more crack cocaine. They later split the money at the Junior Food Market. The State introduced the confession as against O'Neal only, but it is unclear whether the McGehee jury was also present at the time.

Chief Jerry Melton testified that McGehee was arrested on April 21, 1993, and that he was intoxicated at the time. He advised McGehee of his rights, and McGehee was incarcerated. The next day, McGehee was *Mirandized* a second time. A statement was taken, but the circumstances surrounding the taking of the statement, and its introduction at trial are not found in the record.

Dr. Perettie, an associate medical examiner and forensic pathologist for the State, testified that there was evidence from an autopsy of the victim of strangulation, head injuries, vaginal injuries, and other abrasions and contusions. The victim also had numerous recently broken teeth. He further described the injuries to the victim's neck. There were four abrasions to the inside of her right thigh and evidence of a trauma to the vagina. In his opinion, the victim died of strangulation by choking. Dr. Perettie could not say, however, that the victim had been raped, and there was no evidence of semen.

After the State rested, counsel for McGehee moved for a directed verdict. He argued that the State had not proven that a

rape actually occurred or that the victim died under circumstances manifesting extreme indifference to the value of human life. The prosecutor retorted by pointing to the injuries to Johnson's vagina and to her torn undergarments and argued that penetration was a fair inference. The trial court denied the motion for directed verdict.

McGehee took the stand in his own defense and described his long-time abuse of alcohol and drugs. In his rendition of events, he reversed the roles of the two men, as related in O'Neal's statement. He stated that his use of cocaine had caused him to commit a previous burglary and that he had been convicted of the burglary. He also had a prior conviction for assault. He testified that he was in Rose's Cafe in Dermott on April 19, 1993, when O'Neal came in at about 8:30 p.m. He testified that O'Neal asked if he wanted to smoke some crack cocaine. They went to a friend's house and smoked crack. Later, O'Neal asked him if he wanted to commit a breaking and entering. O'Neal told him that there could be up to $3,000 to $5,000 in the proposed victim's house. The two men each bought a beer at Rose's Cafe and walked to the victim's back yard. McGehee testified that O'Neal cut the telephone wire, and he (McGehee) cut the window screen but could not open the inside window. He stated that O'Neal then ran through the door. After McGehee did not hear any gun-shots, he entered the house. He saw O'Neal holding the victim on the couch by her waist with a blanket or a sheet over her head. McGehee grabbed some neckties and tied her legs, while O'Neal tied her hands. He then began to search the house and found a few dollars and some change. He picked up a television set from the bedroom, but O'Neal stopped him because someone might see him with it. McGehee then watched over the victim while O'Neal searched the house. McGehee thought that O'Neal found a $20 bill. McGehee said he ran from the house, and O'Neal came running one to two minutes behind him. They were unsuccessful in finding more crack cocaine and departed for the evening. McGehee testified that Mrs. Johnson was still alive when he left the house and that he learned of her death the next morning. McGehee acknowledged that he went by the street name of "Bosco."

The McGehee jury found McGehee guilty of capital murder, burglary, rape, and robbery.[1] Following the penalty phase, he was sentenced to life in prison without the possibility of parole. The judgment and commitment order shows only the conviction for capital murder and the sentence of life without parole.

## I. Insufficient Evidence

McGehee argues on appeal that the State did not prove that a rape actually occurred, and thus the evidence supporting his conviction for capital felony murder was insufficient. He also argues that there was no proof that the victim died under circumstances manifesting extreme indifference to the value of human life, which is also an element of capital felony murder. *See* Ark. Code Ann. § 5-10-101 (Repl. 1993). These are the same arguments he posited in his motion for a directed verdict at trial.

██ Motions for directed verdict are treated as challenges to the sufficiency of the evidence. *Johnson v. State*, 326 Ark. 3, 929 S.W.2d 707 (1996); *Penn v. State*, 319 Ark. 739, 894 S.W.2d 597 (1995). When a defendant challenges the sufficiency of the evidence convicting him, the evidence is viewed in the light most favorable to the state. *Dixon v. State*, 310 Ark. 460, 470, 839 S.W.2d 173 (1992). Evidence is sufficient to support a conviction if the trier of fact can reach a conclusion without having to resort to speculation or conjecture. *Id.* Substantial evidence is that which is forceful enough to compel reasonable minds to reach a conclusion one way or the other. *Id.* Only evidence supporting the verdict will be considered. *Moore v. State*, 315 Ark. 131, 864 S.W.2d 863 (1993). In order for circumstantial evidence to be sufficient, it must exclude every other hypothesis consistent with innocence. *Davis v. State*, 317 Ark. 592, 879 S.W.2d 439 (1994). Such a determination is a question of fact for the fact-finder to determine. *Sheridan v. State*, 313 Ark. 23, 852 S.W.2d 772 (1993).

---

[1] The O'Neal jury convicted O'Neal of first-degree murder and sentenced him to life in prison. We affirmed the judgment. *O'Neal v. State*, 321 Ark. 626, 907 S.W.2d 116 (1995).

■ ■ McGehee premises his argument on evidence supporting his thesis that there are other explanations for the trauma to the victim's vagina and that Dr. Perettie testified that it was possible that Mrs. Johnson's death was accidental. In this regard, McGehee clearly misapplies our standard of review as set out above. He essentially reargues the credibility of the evidence, an argument which this court is not at liberty to consider. *See Patterson v. State*, 326 Ark. 1004, 935 S.W.2d 266 (1996). We conclude that there was substantial evidence introduced at trial that the victim had been raped because there was proof of trauma to her vagina together with her torn underwear. Moreover, there was substantial evidence that McGehee committed burglary, a second predicate felony, and McGehee does not contend on appeal that there was not.

■ We further conclude that there was substantial evidence of conduct manifesting extreme indifference to the value of human life in that the perpetrator of the murder acted with deliberate conduct which culminated in the death of another person. *See Davis v. State*, 325 Ark. 96, 925 S.W.2d 768 (1996); *Burnett v. State*, 295 Ark. 401, 749 S.W.2d 308 (1988). Here, Dr. Perettie described in detail the bruises to Mrs. Johnson's body, the fact that her teeth were broken, and the injuries that were caused to her by strangulation. This clearly meets the test of substantial evidence. McGehee's point is without merit.

## II. Insufficient Transcript

McGehee complains for his second point that the case should be remanded for retrial because the integrity of the record is suspect. He argues that it would be a farce to uphold his conviction for capital murder under these circumstances. The State's response is that McGehee is not entitled to a new trial because he failed to demonstrate how he was prejudiced by any absent tapes and the quality of the record.

The status of the record in this case has been an issue since 1995. McGehee filed a petition for writ of certiorari to complete the record, and the motion was granted. This court issued a *per curium* opinion explaining the circumstances and ordered that the

record be settled and returned within 30 days. *See McGehee v. State*, 323 Ark. 704, 916 S.W.2d 756 (1996).

On April 11 and 18, 1996, a hearing was held before the trial court to reconstruct the record. The trial court noted that ten bench conferences were not transcribed in the record. McGehee's counsel further announced that there were several other bench conferences that were not noted in the record. He estimated that there were 25 to 30 omitted bench conferences, and he saw no way to reconstruct all of them. The trial court then stated that it would rule on each reconstructed conference.

As the attorneys made their way through the gaps in the record, it was revealed at one point that the prosecuting attorney had called a bench conference to discuss retiring O'Neal's jury when McGehee's statement to the police was introduced. The O'Neal jury was apparently excused. However, there is no testimony about the taking of the McGehee statement by police officers or its introduction. That statement is included in the record along with the other exhibits, and it does bear State's exhibit number 23.

Counsel for McGehee repeatedly objected throughout the reconstruction hearing that more testimony was turning up missing in addition to the bench conferences. Furthermore, it developed that tape 2 from July 15, 1994, and tapes 4 and 5 from July 19, 1993, could not be found to compare against the transcript. Neither could the court reporter's notes for July 12 and 13, 1994, be found. McGehee advised his attorney that he thought he remembered one tape being "eaten" by the machine during trial. Court Reporter Val Dixon-Sims agreed that that was possible, but she did not confirm that it did happen.

The attorneys and trial court also discovered that one tape had not been transcribed. This explained why the transcript segued from Chief Melton's testimony about the McGehee interrogation into Sergeant McAnally's testimony about the crime scene. The transcript further did not reveal whether only O'Neal's jury was present when O'Neal's statement was introduced. The trial court agreed with counsel for McGehee that the transcript contained several inconsistencies but noted that defense

counsel could not point to where those inconsistencies substantially affected the rights of his client, except to say that the cumulative effect of the errors could cause prejudice. The prosecutor agreed generally that the court reporter should not have certified the transcript due to the omitted portions of the trial, the fact that statements made by one attorney were attributed to another attorney, and the fact that statements made at trial were typed incorrectly.

Following the hearing, the trial court issued an order stating that the record had been settled and that the parties had agreed that the omissions and inconsistencies had little effect upon the transcribed record. McGehee then filed a motion for a retrial in this court due to the deficient record, but this court denied the motion.

■ The rules of appellate procedure provide for the reconstruction of a transcript by the best means available. *See* Ark. R. App. P.—Civil 6(d). In *Holiday Inns, Inc. v. Drew*, 276 Ark. 390, 635 S.W.2d 252 (1982), we held that where there is virtually no record of the proceedings conducted out of the presence of the jury and where the record is inadequate for appellate review, the appellate court can do nothing other than remand the case for new trial. In *Drew*, we specifically stated that it is reversible error when the record cannot be settled pursuant to Rule 6. This rule has been applied to a criminal case where the trial court declared that the record could not be settled. *See Ward v. State*, 321 Ark. 659, 906 S.W.2d 685 (1995) (per curiam). In reversing the death sentence in *Ward*, we relied on the fact that the omitted portions of the record were required to be transcribed, and the State could point to no proof in the record that cured the error.

■ This court has most recently reversed a conviction and remanded for a new trial in a case where the same court reporter, Val Dixon-Sims, could not produce a complete transcript of the trial. *See Jacobs v. State*, 327 Ark. 498, 939 S.W.2d 824 (1997). In *Jacobs*, we stated that the trial court has an affirmative duty to see that the court reporter performs satisfactorily in order to provide an adequate record for appeal. We restated the rule announced in *Holiday Inns, Inc. v. Drew, supra,* and *Ward v. State, supra,* and we

stated that when life sentences are involved, the record must be sufficient to review all errors prejudicial to the defendant under Supreme Court Rule 4-3(h), which necessitates that the appellant abstract all rulings adverse to him. That burden could not be met in *Jacobs*, and we remanded for a new trial.

The State argues that no new trial is required, and it relies on *Smith v. State*, 324 Ark. 74, 918 S.W.2d 714 (1996), to support its position. In *Smith*, we concluded that the appellant had not demonstrated prejudice from the state of the record. But in *Smith*, the defendant was convicted of first-degree murder and sentenced to forty years; thus, Rule 4-3(h) was not at issue. In addition, Smith complained only of three isolated incidences where the transcript was deficient, and the trial court addressed the complaints specifically and restated the facts surrounding his ruling.

In the instant case, the parties made a valiant and concerted effort to reconstruct the record. At the hearing, the trial court addressed each instance where the transcript noted a bench conference but where testimony of the conference was not transcribed. The parties listened painstakingly to the tapes, and although there was some disagreement throughout the hearing, no one, including McGehee's counsel, could show where any individual omission regarding a bench conference was prejudicial. Nevertheless, the parties' agreement on these precise incidents does not satisfy the requirements of Rule 4-3(h) for the entire trial.

There is one aspect of the record that is particularly troublesome. As referenced above, the record does not specifically show the circumstances surrounding the taking of McGehee's statement by police officers or that that statement was introduced into evidence. The McGehee statement is included in the packet of exhibits, but this gap in evidence was not addressed or cured by the attorneys in the reconstruction hearing. We believe that Chief Melton's omitted testimony on McGehee's statement is crucial to a review of this case. *See Ward v. State, supra.* There is also no record of whether the McGehee jury was present when the O'Neal statement was read into evidence. Because the O'Neal statement implicated McGehee in the murder, this clearly would

have been reversible error. Yet, we cannot determine from the record what happened in this regard.

■ We conclude that we are precluded by the state of this record from a full review of what transpired at trial, which is particularly problematic when we are required to review all adverse rulings in life and capital cases under Supreme Court Rule 4-3(h).

■ There is one additional point. Following the hearing, the trial court entered an order reconstructing the record. That order reads in part:

> 4. The parties agreed to and were satisfied with the meaning, essence and interpretation given each bench conference by the Court.
>
> 5. The parties further agreed and admitted that the omissions and inconsistencies found between actual and transcribed records had very little [e]ffect, if any, upon the interpretation and meaning of the transcribed record.

Defense counsel apparently did not object to this language before the trial court. Nevertheless, the court order pertained only to the reconstructed bench conferences and did not relate to the missing tape or to the questions surrounding the introduction of the O'Neal and McGehee statements before the two juries. McGehee's counsel objected throughout the hearing about the gaps in the transcript. And after the trial court's order, he moved for a new trial in this court based on the defective transcript, and we denied the motion. We do not conclude defense counsel waived his objections to the state of the record under these facts.

■ Now on full review, we agree that a new trial is warranted. The confusion over the introduction of the two statements before the McGehee and O'Neal juries in the same proceeding would warrant it. Without clarification concerning those statements, in addition to the numerous omissions and inconsistencies in the transcript, and because of the court reporter's failure to transcribe at least one tape, we have no choice but to remand for a new trial where life without parole is the sentence at issue.

Reversed and remanded.