Kevin Allen LLOYD *v.* STATE of Arkansas

CR 97-154                                         962 S.W.2d 365

Supreme Court of Arkansas
Opinion delivered February 26, 1998

*Dunham & Faught, P.A.,* by: *James Dunham,* for appellant.

*Winston Bryant,* Att'y Gen., by: *C. Joseph Cordi, Jr.,* Asst. Att'y Gen., for appellee.

W.H. "DUB" ARNOLD, Chief Justice. The appellant, Kevin Allen Lloyd, was convicted of the capital murder of his father, Ken Lloyd, and was sentenced to life imprisonment without parole. His sole argument on appeal is that there was insufficient evidence of premeditation and deliberation to support his conviction. We disagree, and affirm appellant's conviction and sentence.

On October 19, 1995, the body of Ken Lloyd was found in his home on Crow Mountain in Pope County. He had been shot three times with a sawed-off twelve-gauge pump shotgun. Sergeant Aaron Duvall of the Pope County Sheriff's Office located the murder weapon on the living room floor of the residence. He determined that two different types of shells had been fired — double-00 buckshot and number-six game-load. He further

explained that, after the shotgun was fired, the shooter had to eject the empty casing by bringing the pump down, then back up to pump another round into the chamber to fire another shot. According to Sergeant Duvall, a person had to make a conscious effort to pump the shotgun and fire it.

After learning that appellant lived at the victim's residence, Pope County Sheriff Jay Winters and Arkansas State Trooper Jerry Roberts began searching for him and eventually developed him as a suspect. They found appellant in a large metal drainage tile in an area north of Interstate 40. After being advised of his *Miranda* rights, appellant admitted that he had shot his father three times because he was mad at him. In a later taped statement, appellant stated that his father was asleep when he shot him the first time, and that he shot him two more times after he got up.

Appellant's sister, Christy Lloyd, testified that appellant had talked about killing their father for six months to a year, and that his remarks intensified prior to the victim's death. Specifically, appellant told Christy that he hated their father, wished he were dead, and that he was going to kill him. Prior to the murder, the appellant told Christy that he had obtained a shotgun from a friend. He took the shotgun to the shed, sawed the barrel off, and showed the gun to her. Appellant, who did not wear his glasses in spite of his poor eyesight, explained to Christy that he had sawed the barrel off because he could point it and "hit stuff easier," as a sawed-off shotgun was easier to aim because you could point and shoot it without seeing the target. According to Christy, appellant demonstrated this for her by shooting some spray-paint cans.

Tim Ramsden, a friend of appellant's, testified that, at 12:50 p.m. on October 18, 1995, the day of the murder, appellant telephoned his residence and asked if his jacket was in his (Ramsden's) room. According to Ramsden, who did not drive, appellant wanted the shells that were in the jacket. Appellant asked Ramsden to have another friend, Shiloh McClure, who had a car, to bring the jacket to appellant's house.

Dennis Brown, another friend of appellant's, was also present at Ramsden's house when appellant made the telephone inquiry about his jacket. Brown rode with McClure to appellant's house.

Upon arrival, appellant approached the car and retrieved his jacket from Brown. According to Brown, appellant "looked and acted demonic" and had an "evil glare." Appellant took three shotgun shells out of his jacket and stated that he did not need the rest of them. He then walked away from the car. Brown and McClure had been waiting in the car for approximately twenty minutes when Brown heard three shotgun blasts that appeared to come from the house. According to Brown, the first and second shots were one second apart, but the third blast occurred some ten to fifteen seconds later. Appellant then ran to the car and climbed inside. According to Brown, appellant stated that he felt "evil" and felt good about killing his father. Appellant described how he was "relieved" and felt his life was "complete and that it was over." McClure drove for approximately ten to fifteen minutes before dropping appellant off.

Dr. Stephen A. Erickson, Associate Medical Examiner of the State Crime Lab, examined the victim's body and determined that the death was the result of a homicide. One of the three shotgun wounds was located around the upper left leg, lower left abdomen, left groin, and genitalia. A second wound was located on the victim's right leg. Buckshot pellets created separate entrance wounds into the leg that broke the ends of the femur, tibia, and fibula bones. According to Dr. Erickson, this wound caused massive damage to the victim's leg, destroying all the vasculature. The third and final wound was located on the victim's right forearm and created an "explosive-type injury" that destroyed the muscles, bones, arteries, and nerves in the arm. It was Dr. Erickson's testimony that these multiple gunshot wounds caused bleeding, which led to shock, vascular collapse, and, ultimately, the victim's death.

At the close of the State's case in chief, appellant moved for directed verdict on the ground that the State had failed to show sufficient evidence of premeditation and deliberation. The trial court denied the motion. Appellant rested without presenting any evidence. After hearing all the evidence, the jury was instructed on capital murder, as well as the lesser-included offenses of first-degree murder and second-degree murder.

■ ■  We have recently reviewed the guidelines for reviewing challenges to the sufficiency of the evidence in *Green v. State*, 330 Ark. 458, 466-7, 956 S.W.2d 849 (1997); *quoting McGehee v. State*, 328 Ark. 404, 410, 943 S.W.2d 585, 588 (1997):

> Motions for directed verdict are treated as challenges to the sufficiency of the evidence. *Johnson v. State*, 326 Ark. 3, 929 S.W.2d 707 (1996); *Penn v. State*, 319 Ark. 739, 894 S.W.2d 597 (1995). When a defendant challenges the sufficiency of the evidence convicting him, the evidence is viewed in the light most favorable to the state. *Dixon v. State*, 310 Ark. 460, 470, 839 S.W.2d 173 (1992). Evidence is sufficient to support a conviction if the trier of fact can reach a conclusion without having to resort to speculation or conjecture. *Id.* Substantial evidence is that which is forceful enough to compel reasonable minds to reach a conclusion one way or the other. Id. Only evidence supporting the verdict will be considered. *Moore v. State,* 315 Ark. 131, 864 S.W.2d 863 (1993).

*See also Stewart v. State*, 331 Ark. 359, 961 S.W.2d 750 (1998). Specifically, appellant maintains that his capital-murder conviction should be reversed because the State failed to prove premeditation and deliberation. *See* Ark. Code Ann. § 5-10-101(a)(4) (Repl. 1997). "Premeditation and deliberation may be inferred from the type and character of the weapon used, the manner in which the weapon was used, the nature, extent, and location of the wounds inflicted, and the conduct of the accused." *Green*, 330 Ark. at 467; *citing Key v. State*, 325 Ark. 73, 923 S.W.2d 865 (1996); *Kemp v. State*, 324 Ark. 178, 919 S.W.2d 943 (1996), *cert. denied*, 117 S.Ct. 436 (1996).

On appeal, appellant argues that the only evidence of premeditation and deliberation came from the testimony of Dennis Brown, who appellant claims was an accomplice. Thus, according to the appellant, Brown's testimony regarding premeditation and deliberation must have been corroborated. During cross-examination of Brown, appellant requested at a side-bar conference that the trial court declare the witness an accomplice as a matter of law. The trial court refused to do so, stating that whether Brown was an accomplice was a mixed question of law and fact. The trial court did indicate, however, that it could foresee an accomplice

instruction being included at the end of the trial. However, no accomplice instructions were requested or submitted to the jury. Thus, Brown was never found to be an accomplice.

■ ■ Appellant bears the burden of proving that a witness is an accomplice whose testimony must be corroborated. *Cole v. State,* 323 Ark. 8, 913 S.W.2d 255 (1996). An accomplice is one who, with the purpose of promoting or facilitating the commission of an offense, either solicits, advises, encourages, or coerces the other person in planning or committing it, or fails to make a proper effort to prevent the commission of the offense, provided he has a legal duty to prevent it. *Id.* Appellant contends that the evidence was insufficient to corroborate Brown's testimony. Because Brown was never found to be an accomplice whose testimony must be corroborated, we do not address this argument. *See Vickers v. State,* 313 Ark. 64, 852 S.W.2d 787 (1993). Appellant failed to request that accomplice instructions, including the instruction on corroboration, be submitted to the jury for consideration. Thus, appellant has not preserved this issue for our consideration. *Id.*

■ Viewing the evidence in this case in the light most favorable to the State, there was substantial evidence that appellant acted with premeditation and deliberation in causing his father's death. Appellant shot the victim three times with a sawed-off twelve-gauge shotgun. He had to deliberately expel a spent shell and pump another round into the chamber between shots. At least one of the victim's wounds was inflicted with buckshot. Dennis Brown testified that approximately ten to fifteen seconds elapsed between the second and third shots. Appellant's sister testified that appellant had been talking about killing their father for months. According to Christy Lloyd, appellant sawed off the barrel of the shotgun in order to improve his chances of hitting his target, and practiced shooting the shotgun at cans. Shortly before the murder, appellant telephoned his friend Tim Ramsden for the purpose of retrieving shotgun shells that were in a jacket at Ramsden's residence. Upon receiving the shells, appellant took only three shells, stating that he did not need the rest. After the shooting, appellant made statements that he felt both "good" and "relieved" about the killing. Finally, appellant confessed to shoot-

ing his father because he was mad at him. When considering this evidence, the jury could have concluded, without resorting to speculation or conjecture, that appellant's killing of his father was a premeditated and deliberate act.

The record has been examined under Ark. Sup. Ct. R. 4-3(h) for reversible error, and none has been found.

Affirmed.