James WINDSOR *v.* STATE of Arkansas

CR 99-207                                    1 S.W.3d 20

Supreme Court of Arkansas
Opinion delivered October 7, 1999

*Kenneth G. Fuchs,* for appellant.

*Mark Pryor*, Att'y Gen., by: *Michael C. Angel*, Ass't Att'y Gen., for appellee.

W H. "DUB" ARNOLD, Chief Justice. The appellant, James W. Windsor, was found guilty of two counts of first-degree murder for the July 17, 1997, murders of Donald Moser and Rebecca Smith and was sentenced to two life terms of imprisonment. Seeking revenge over a drug deal gone awry, appellant, along with Marshall Ramsey and Dena Tucker, drove a red pickup truck, previously reported stolen, to the victims' home, planning to burn the victims' house down with Moser and Smith inside. After threatening the victims, a struggle ensued, wherein Donald Moser was shot in the chest and repeatedly beaten in the head.

Dena Tucker then stabbed Rebecca Smith approximately twenty times in the neck with a butcher knife; appellant joined in by beating Smith in the head several times with the barrel of a shotgun. Fires were then started throughout the victims' home. Leaving the victims for dead, the three then left the scene. Appellant and Ramsey dropped Tucker off at her home in Perry County, then returned to their homes in Texas.

Both victims died. The medical examiner testified at trial that Donald Moser died as a result of both the gunshot wounds and the head beatings, although either one alone would have caused his death. He further testified that Rebecca Smith died as a result of the stabbing and head beatings, although either one alone would have caused her death, as well.

Marshall Ramsey entered into a plea agreement with the State wherein he pleaded guilty to two lesser charges of second-degree murder, as well as arson, and received a much-reduced sentence. This offer was made available to him only in exchange for his truthful testimony against appellant at appellant's trial. Marshall Ramsey testified against appellant.

Although appellant was charged with two counts of capital felony murder, as well as arson, appellant was found guilty at trial of two counts of murder in the first degree and was found not

guilty of arson. He was sentenced to two terms of life imprisonment. He now brings this appeal.

For his appeal, appellant asserts the following:

(1) The trial court erred in not suppressing Marshall Ramsey's testimony due to witness bribery;

(2) The evidence at trial was insufficient to convict him on first-degree murder charges;

(3) The trial court erred in disallowing the defendant from testifying about what Dean Tucker and Marshall Ramsey stated in furtherance of the conspiracy.

## I. Witness bribery

In reviewing a trial judge's ruling on a motion to suppress, this Court makes an independent determination based upon the totality of the circumstances, viewing the evidence in a light most favorable to the State; we reverse only if the ruling is clearly against the preponderance of the evidence. *Tabor v. State*, 333 Ark. 429, 971 S.W.2d 227 (1998); *Norman v. State*, 326 Ark. 210, 931 S.W.2d 96 (1996).

Prior to trial, appellant filed a motion in limine, requesting that Marshall Ramsey's testimony at appellant's trial be excluded, alleging that it would be the result of witness bribery in violation of Ark. Code Ann. § 5-53-108 (Repl. 1997). Marshall Ramsey had entered into a plea agreement with the State wherein he pleaded guilty to two lesser charges of second-degree murder, as well as arson, and received a much-reduced sentence of forty years for each of the second-degree murders, with fifteen years suspended on each count, and a thirty-year sentence on the charge of arson, which was suspended in its entirety. This offer was made available to him only in exchange for his truthful testimony against appellant at appellant's trial. Marshall Ramsey testified against appellant at appellant's trial. Appellant's motion in limine sought to exclude this testimony as illegal due to the inducement to influence Marshall Ramsey's testimony. The motion was denied by the trial court.

Appellant contends that the trial court erred in not excluding the testimony of Marshall Ramsey, the State's central witness against appellant. As he did below, appellant now argues that the State engaged in witness bribery by granting Mr. Ramsey leniency in his sentence in exchange for his testimony at appellant's trial. As authority for this contention, appellant cites *United States v. Singleton*, 144 F.3d 1343 (10th Cir. 1998), wherein the Tenth Circuit Court of Appeals found that the prosecutor in that case, who offered a co-conspirator a downward departure from his sentence if he testified against Singleton, had violated the federal witness bribery statute. The court therein suppressed the co-conspirator's testimony.

While the *Singleton* case might otherwise be compelling to support appellant's argument, the Tenth Circuit later vacated this decision on July 10, 1998, and, on its own motion, granted rehearing *en banc*. The case was overruled upon rehearing *en banc* on January 8, 1999. *United States v. Singleton*, 165 F.3d 1297 (10th Cir. 1999), *cert. denied*, 119 S.Ct. 2371, 144 L.Ed.2d 775 (1999). Therefore, appellant's reliance on the *Singleton* case is erroneous.

Further, even if *Singleton* had not been overturned, appellant's reliance on same is still erroneous because the law in Arkansas regarding witness bribery is different from the federal law on which *Singleton* was based. Federal law requires no intent or purpose to influence, while Arkansas does. See Ark. Code Ann. § 5-53-108 (Repl. 1997).

■ ■ It is routine in criminal prosecutions for the State to use accessories to testify under a plea bargain that promises a request for a reduced sentence. *See United States v. Cervantes-Pacheco*, 826 F.2d 310 (5th Cir. 1987). After all, because the trial court is the sentencing entity, the prosecutor may only *request* a reduced sentence; the trial court does not have to accept any plea agreement or its terms. Each criminal defendant is expressly asked whether he or she understands this at the time he or she is entering a plea of guilty. To suggest, as appellant does, that the prosecutor in this case has violated Ark. Code Ann. § 5-53-108 and should, therefore, be subject to criminal prosecution for entering into a plea agreement with Mr. Ramsey is nonsense. This Court

will not interpret a statute, even a criminal one, so as to reach an absurd conclusion that is contrary to legislative intent. *See Mings v. State*, 316 Ark. 650, 873 S.W.2d 559 (1994).

■ Appellant was given ample opportunity to cross-examine Ramsey concerning his plea agreement with the State; in fact, appellant did cross-examine Ramsey on this issue quite extensively. In short, appellant's contention that Mr. Ramsey's testimony should have been excluded altogether has no basis in the law. We, therefore, hold that the trial court correctly denied his motion in limine to suppress Ramsey's testimony.

## II.  Sufficiency of the evidence

At trial, appellant moved for a directed verdict at the conclusion of the State's case and argued two points: (1) that there was no evidence that he committed the murders; (2) that there was insufficient evidence to corroborate the testimony of Marshall Ramsey, a purported accomplice. The trial court denied his motion. Appellant renewed his directed-verdict motion at the close of all the evidence and the trial court once again denied it.

On appeal, appellant argues first that because the cause of death of the two victims, as testified to by the medical examiner, was *both* a gunshot wound *and* head injuries as to Mr. Moser, although either alone would have caused his death, and *both* stab wounds *and* head injuries as to Ms. Smith, although either alone would have caused her death, it is impossible to deem appellant's infliction of the head injuries as *the* cause of death of the victims. Further, appellant contends that because Marshall Ramsey testified that he (Ramsey) shot Moser and that Dena Tucker stabbed Smith, appellant's alleged infliction of head beatings on the victims was "inconsequential," and does not amount to "substantial evidence" in order to support a conviction on two counts of first-degree murder.

Second, appellant argues that there was no evidence to corroborate Marshall Ramsey's testimony, and because Ramsey was an accomplice, his testimony alone is insufficient to establish the commission of the offense and to connect the appellant with same. Appellant cites Ark. Code Ann. § 16-89-111(e)(1) (1987), which

states, "A conviction cannot be had in any case of felony upon the testimony of an accomplice unless corroborated by other evidence, tending to connect the defendant with the commission of the offense." Appellant further argues that Dena Tucker's testimony may not be used to corroborate Marshall Ramsey's testimony because she, too, was an accomplice.

■ Motions for directed verdicts are treated as challenges to the sufficiency of the evidence. *Tinsley v. State*, 338 Ark. 342, 993 S.W.2d 898 (1999); *Bailey v. State*, 334 Ark. 43, 972 S.W.2d 239 (1998); *McGehee v. State*, 328 Ark. 404, 943 S.W.2d 585 (1997). The test on appeal is whether there is substantial evidence to support the verdict. *Jameson v. State*, 333 Ark. 128, 970 S.W.2d 785 (1998). When a defendant challenges the sufficiency of the evidence convicting him, the evidence is viewed in the light most favorable to the State. *Dixon v. State*, 310 Ark. 460, 470, 839 S.W.2d 173 (1992). Evidence is sufficient to support a conviction if the trier of fact can reach a conclusion without having to resort to speculation or conjecture. *Id.* Substantial evidence is that which is forceful enough to compel reasonable minds to reach a conclusion one way or the other. *Id.* Only evidence supporting the verdict will be considered. *Moore v. State*, 315 Ark. 131, 864 S.W.2d 863 (1993); *Lloyd v. State*, 332 Ark. 1, 962 S.W.2d 365 (1998); *Green v. State*, 330 Ark. 458, 956 S.W.2d 849 (1997); *McGehee v. State*, 328 Ark. 404, 943 S.W.2d 585 (1997).

■ Appellant's arguments fail for several reasons. First, taking his arguments in reverse order, appellant's argument that Dena Tucker was an accomplice and therefore cannot corroborate Marshall Ramsey's testimony was never argued below. Therefore, this Court may not address this point, as it is well settled that we will not address arguments raised for the first time on appeal. *See, e.g., McGhee v. State*, 330 Ark. 38, 954 S.W.2d 206 (1997).

■ Second, appellant never requested at trial that Marshall Ramsey be declared an accomplice as a matter of law, nor did he request that his status be submitted to the jury for determination. In addition, appellant did not even request a jury instruction to the effect that the testimony of an accomplice requires corroboration. This Court has clearly held that the appellant bears the bur-

den of proving that a witness is an accomplice whose testimony must be corroborated. *Lloyd v. State*, 332 Ark. 1, 962 S.W.2d 365 (1998). A defendant must either have the trial court declare a witness to be an accomplice as a matter of law or submit the issue to the jury for determination. *Hogue v. State*, 323 Ark. 515, 915 S.W.2d 276 (1996); *Rockett v. State*, 319 Ark. 335, 891 S.W.2d 366 (1995).

■ When the trial court does not find a witness to be an accomplice, and the defendant fails to request that accomplice instructions be submitted to the jury for consideration, the issue is not preserved for appellate review. *Lloyd v. State, supra; Rockett v. State, supra.* As a result, appellant's failure to have Ramsey declared an accomplice or to have the jury consider it precludes him from raising the witness–corroboration rule on appeal. *Lloyd v. State, supra; Campbell v. State*, 319 Ark. 332, 891 S.W.2d 55 (1995); *Vickers v. State*, 313 Ark. 64, 852 S.W.2d 787 (1993).

Finally, in regard to appellant's challenge to the sufficiency of the evidence to convict him of two counts of first-degree murder, the trial court properly denied this motion, as well, as substantial evidence existed to support his convictions for first-degree murder. At trial, the testimony revealed that on July 17, 1997, Rodney Sanders, a fireman in Conway, responded to a report of a house fire in rural Faulkner County. When Sanders arrived at approximately 7:15 a.m. he found that an older wood–frame house had been destroyed by a fire. Sanders noticed a car in the front yard and was therefore concerned that someone might have died in the fire. He sifted through the remains of the house and found two bodies. Patrick Moore, the Faulkner County Coroner, identified the bodies, which had been found in separate bedrooms, as Donald Moser and Rebecca Smith.

Dr. Stephen Erickson, a medical examiner for the Arkansas State Crime Laboratory, testified that he performed autopsies on both victims. He found that Donald Moser died of a gunshot wound to the chest, although he also suffered multiple skull fractures and head trauma consistent with being hit with a heavy object. Dr. Erickson also found that Rebecca Smith had been stabbed in the heart and lungs, and that she also suffered severe

cranial cerebral injuries similar to those sustained by Mr. Moser. He testified that the skull fractures the victims received were severe enough alone to cause death.

Dena Tucker testified that her son had asked appellant and Marshall Ramsey, who were living in Texas at the time, to pick him up in Arkansas and drive him to Texas so he could be with his pregnant girlfriend. Appellant and Ramsey agreed, drove to Arkansas, and stayed at Dena Tucker's house. While at her house, appellant and Ramsey met Donald Moser, who was, at the time, having an affair with Ms. Tucker.

Testimony continued that appellant had struck a deal with Moser, a methamphetamine dealer, in which appellant would drive to Texas to obtain chemicals that were to be processed by Moser into methamphetamine. In return, appellant was to receive $8,000 from Moser for the chemicals and $250 in expense money. However, when appellant returned from Texas with the chemicals, he learned that Moser could not afford to pay him. In addition, Moser had stopped seeing Dena Tucker and appellant's repeated efforts to locate him failed.

Appellant and Ramsey spent three days looking for Moser. Tucker testified that once, she and appellant went to Moser's home and appellant began to beat on the door with a baseball bat in an attempt to get Moser to come outside. However, Rebecca Smith was the only one home at the time; she called out to appellant to leave her alone, and she eventually called the police. A recording of Smith's call to police was played for the jury.

Eddie Lee testified that on July 17, 1997, appellant came to his house at approximately 4:30 a.m. and accused Lee of hiding Moser. Appellant informed Lee that Moser owed him $250 and that he and a "buddy" were looking for him. Appellant left Lee's house after they engaged in a protracted argument concerning Moser's whereabouts. Lee recalled that the day before he witnessed appellant beating on Moser's door with a baseball bat.

Eddie Schafer testified that at approximately 5:30 the same morning, he drove to Moser's home to collect money that Moser owed him. Schafer noticed a red pickup truck parked outside

Moser's home. Schafer asked the driver if Moser was home, but the driver replied that he did not know. Schafer left, returned a short time later, and observed that the red truck had moved and that nobody was in the car. Schafer heard Moser inside the house cursing; he said it sounded like a "fight breaking out." When he heard Rebecca Smith scream, Schafer left and drove to a nearby corner store. A short time later, he observed the same red truck speeding down the road near the store. The red truck had been reported stolen out of a garage the night before.

Sherry Martin, an employee of the corner store, testified that she noticed a suspicious unoccupied car with a Texas license plate parked outside the building when she opened the store around 6:00 a.m., the morning of July 17, 1997. Ms. Martin searched in vain for the owner of the car and then noticed a red truck speeding around the side of the store. When she saw appellant exit the red truck, Martin confronted him about whether he owned the car; appellant said that the car was his, apologized, and drove away.

Obviously, the State produced sufficient evidence to establish that a crime had been committed through the testimony of the State medical examiner. While it is true that the medical examiner testified that either the gunshot wound or the head injuries alone could have caused Mr. Moser's death, and that either the stab wounds or the head injuries alone could have caused Ms. Smith's death, the trial court found that the victims' cause of death in this case was a question for the jury. We agree.

Further, Sherry Martin's unequivocal testimony placing appellant in proximity to the crime scene on the morning the murders took place was confirmed by appellant's own trial testimony, wherein he admitted that he had parked his vehicle at the corner store. Schafer's testimony also placed the red truck at Moser's home shortly before Ms. Martin saw appellant exit the red truck at the corner store. Further, appellant testified that he did, in fact, have a deal to supply Moser with chemicals for the manufacture of methamphetamine. Appellant's testimony that Moser refused to pay him for the chemicals could very well have been a motive for the murders.

Finally, there was ample evidence adduced at trial showing that, prior to the murders, appellant acted in concert with Marshall Ramsey, who confessed to shooting Moser. Ramsey and appellant both went to Texas to obtain chemicals; they returned to Arkansas to deliver them to Moser; and, in the days prior to the murders, they both earnestly searched for Moser. Moreover, as stated above, appellant admitted at trial that he accompanied Ramsey to the corner store, which was near the scene of the murders.

■ In sum, these facts, taken in the light most favorable to the State, amount to sufficient evidence to convict appellant of the first-degree murders of both victims. Accordingly, the trial court properly denied appellant's directed-verdict motion.

## III. Cumulative evidence

At trial, during the direct examination of appellant, the trial court sustained a hearsay objection made by the State. Appellant made a proffer at the close of the evidence that Mr. Ramsey told him that Dena Tucker wanted to burn down the victims' house with them inside, in order to kill them. As he did below, appellant now argues that the trial court erred in excluding that evidence pursuant to the co-conspirator exception to the hearsay rule, Ark. R. Evid. 801(d)(2) (1999). Appellant claims that Rule 801 would have allowed the testimony in as a statement made by a co-conspirator during the course and in furtherance of the conspiracy.

■ This Court has repeatedly held that prejudice is not presumed and that we will not reverse the trial court's ruling absent a showing of prejudice. *Clark v. State*, 323 Ark. 211, 913 S.W.2d 297 (1996). In this case, appellant has failed to demonstrate any prejudice from the exclusion of this evidence because Marshall Ramsey had already testified that Dena Tucker wanted to burn down the victims' house. We, therefore, hold that as appellant simply sought to introduce cumulative evidence, he was not prejudiced by the trial court's ruling in this regard. *See Snell v. State*, 290 Ark. 503, 721 S.W.2d 628 (1986), *cert. denied*, 484 U.S.

872 (1987) (finding that testimony that merely cumulative cannot effect the substantial rights of a defendant).

### IV.  Rule 4-3(h)  Compliance

The record has been reviewed for prejudicial error pursuant to Ark. Sup. Ct. R. 4-3(h), and no reversible errors were found.

### V.  Conclusion

For all of the above-stated reasons, we hereby affirm the convictions and life sentences of appellant James W. Windsor on both first-degree murder charges.

Affirmed.