Cite as 2024 Ark. App. 241

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR-23-661

| | | |
|---|---|---|
| SENTOREN BROOKS | | Opinion Delivered April 10, 2024 |
| | APPELLANT | APPEAL FROM THE CHICOT COUNTY CIRCUIT COURT [NO. 09CR-21-79] |
| V. | | |
| | | HONORABLE QUINCEY ROSS, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

## STEPHANIE POTTER BARRETT, Judge

Appellant Sentoren Brooks appeals from his second-degree-murder conviction for which he was sentenced to fifty-five years in the Arkansas Division of Correction (ADC) and given a $15,000 fine by a Chicot County jury. He argues on appeal that the trial court erred in denying his motion for directed verdict on insufficiency-of-the-evidence grounds because the State failed to corroborate the accomplice's testimony. We find no error and affirm.

On June 21, 2021, after receiving an anonymous tip, officers with the Eudora Police Department discovered the decomposing body of Michael Calloway inside a vacant building. Calloway was last seen alive on June 13, 2021, when he came to Eudora from his home in Louisiana. Special Agent David Tumey of the Arkansas State Police was assigned to assist in the investigation. After interviewing several witnesses, investigators arrested Brian Wright for the murder of Calloway and issued a warrant for Brooks's arrest.

On July 16, 2021, Brooks was arrested in Detroit, Michigan, by U.S. Marshals and returned to Chicot County where he was arrested for murder in the first degree and possession of firearms by certain persons pursuant to the habitual-offender statute because he had three prior felonies. Prior to trial, the firearms charge was severed from the murder charge.

At trial, Wright admitted he agreed to testify in exchange for a plea agreement reducing his charge of first-degree murder to second-degree murder and a sentence of twenty years in the ADC with an additional ten years' suspended imposition of sentence. Wright testified that Brooks told him on June 13, 2021, he was going to kill Calloway because he was a snitch. Brooks, Wright, and Calloway were seen together by Angelo Strong, Jeremaine McGowan, Tony Pritchard, and Charlie Henderson at various times that day. Each of these four witnesses testified they saw Brooks with a handgun that day. Brooks, Wright, and Calloway went to McGowan's house that afternoon, and they all "talked for a little while." Wright testified that Brooks asked McGowan for some bullets, but McGowan said he didn't have any. McGowan testified that while all three men were at his house, he was asked for plastic gloves, which he provided. He further testified that he saw Brooks and Wright put the gloves on in the house while Calloway was outside. As they were leaving, McGowan heard them talking about "hittin' a lick."

Wright further testified that after leaving McGowan's home, he led Brooks and Calloway to a vacant house near McGowan's home where they walked back to a bedroom. Wright testified he didn't see it happen, but Brooks shot Calloway, and he saw blood on

Calloway's chest. Calloway didn't die immediately so Brooks then shot him twice in the face. Before Wright and Brooks left the crime scene, Brooks instructed Wright to take a video of him with Calloway's dead body and send it to him so that he could send it to another person for "confirmation." Wright recorded the video with his cellphone. The next day Wright deleted the video, but investigators were able to retrieve the video that showed Brooks and Wright talking and a plastic glove was shown in the video. The video was introduced, and Wright identified the voices on the video as his and Brooks's, who said, "He already dead." After filming the video, Brooks and Wright then partially covered Calloway with a mattress. Strong testified that the day after the murder, Brooks called him and said, "I put two in your boy." Strong testified that when he asked Brooks what he meant, Brooks said, "I put two in your boy's head."

At the close of the State's case and at the close of the defense's case, Brooks moved for a directed verdict on the ground of insufficiency of the evidence because there was no corroboration of Wright's accomplice testimony. The trial court denied his motion both times. The jury found him guilty of second-degree murder and sentenced him to fifty years in the ADC and a $15,000 fine.

The corroborating evidence may be circumstantial so long as it is substantial; evidence that merely raises a suspicion of guilt is insufficient to corroborate an accomplice's testimony. *Riley v. State*, 2009 Ark. App. 613, 343 S.W.3d 327. The presence of an accused in proximity to a crime, opportunity, and association with a person involved in the crime are relevant facts in determining the connection of an accomplice with the crime. *Id.*

3

Corroborating evidence need not, however, be so substantial in and of itself to sustain a conviction. *Smith*, *supra*. Rather, it need only, independent of the testimony of the accomplice, tend in some degree to connect the defendant with the commission of the crime. *Procella v. State*, 2016 Ark. App. 515, 504 S.W.3d 686. In this case, there was substantial circumstantial and direct evidence to connect Brooks to the murder in addition to Wright's codefendant testimony.

A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Norwood v. State*, 2023 Ark. App. 387. When reviewing a challenge to the sufficiency of the evidence, this court views the evidence in the light most favorable to the State and considers only that evidence that supports the verdict. *Id.* A judgment of conviction will be affirmed if substantial evidence exists to support it. *Id.* Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion without resorting to speculation or conjecture. *Id.* This court defers to the jury's determination on the matter of witness credibility. *Id.* Jurors do not and need not view each fact in isolation; rather, they may consider the evidence as a whole. *Id.*

Brooks was charged with murder in the first degree, but the jury found him guilty of murder in the second degree. It is apparent from Brooks's directed-verdict motion that he raised no sufficiency challenge to the lesser-included offense of second-degree murder for which he was convicted. Our supreme court has made it clear that a defendant, in making a motion for directed verdict, must anticipate an instruction on a lesser included offense and specifically address the elements of that lesser included offense on which he or she wishes to

4

challenge the State's proof in his or her motion. *Brown v. State*, 347 Ark. 308, 65 S.W.3d 394 (2001); *Thornton v. State*, 2018 Ark. App. 33, at 7, 539 S.W.3d 624, 629. This includes arguments directed at whether the testimony of an accomplice is sufficiently corroborated. *See Bryant v. State*, 2011 Ark. App. 348, at 5–6, 384 S.W.3d 46, 49 (accomplice-corroboration argument not preserved when defendant argued lack of accomplice corroboration of charged offense of possession of methamphetamine with intent to deliver but was convicted of possession of methamphetamine). The defendant must do so either by name or by apprising the trial court of the elements of the lesser-included offenses questioned by the motions for directed verdict. *Haynes v. State*, 346 Ark. 388, 58 S.W.3d 336 (2001) (concluding that a challenge to the sufficiency of the evidence to support a first-degree-murder conviction was procedurally barred when the defendant was charged with capital murder and failed to move specifically for directed verdict on the lesser-included offense of first-degree murder). This court has held that Arkansas Rule of Criminal Procedure 33.1 is to be strictly construed. *See Pratt v. State*, 359 Ark. 16, 194 S.W.3d 183 (2004). Because Brooks failed to move for a directed verdict on the lesser included offense of second-degree murder, he is procedurally barred from challenging the sufficiency of the evidence on appeal.

The State urges on appeal that because Brooks did not seek to have the trial court declare Wright an accomplice as a matter of law or submit the issue to the jury in the instructions, he is precluded from raising the accomplice-corroboration rule on appeal. The State relies on *Windsor v. State*, 338 Ark. 649, 1 S.W.3d 20 (1999). In *Windsor*, the supreme court explained that when a trial court does not find a witness to be an accomplice, and the

defendant fails to request that accomplice instructions be submitted to the jury for consideration, the issue is not preserved for appellate review. *Id.* at 656, 1 S.W.3d at 24. It is clear from the record in this case that the court, the defense counsel, and the prosecutor all accepted the fact that Wright was an accomplice. Defense counsel based his directed-verdict motion on the fact that the State had failed to provide corroboration as a matter of law. The prosecutor responded to the motion by specifically referring to the other witnesses' testimony describing what they saw and heard on the day of the murder. The court recited the testimony of other witnesses that corroborated Wright's testimony, and although it did not use the term accomplice, the court referenced the effect of "taking out" Wright's testimony from the evidence and cited corroborating evidence testified to by other witnesses. *See Flowers v. State*, 92 Ark. App. 29, 210 S.W.3d 907 (2005). The court unambiguously found Wright to be an accomplice, regardless of the omission of the phrase "the court finds this witness to be accomplice." *See Brown v. State*, 82 Ark. App. 61, 110 S.W.3d 293 (2003). The court found that the accomplice testimony was sufficiently corroborated and that there was enough evidence to submit the case to the jury, and Brooks's motion for directed verdict was denied. Brooks's argument is therefore preserved for review on appeal; however, his challenge to the sufficiency of the evidence must nevertheless fail.

In this case, evidence other than the accomplice's testimony tends to a substantial degree to connect Brooks with the commission of the crime. The testimony of Angelo Strong presents both circumstantial and direct evidence of Brooks's guilt while corroborating the testimony of Wright. Strong had seen Brooks with a gun the day Calloway disappeared.

Wright testified that Brooks shot Calloway once in his chest and twice in his head. Dr. Charles Kokes, the Arkansas associate medical examiner who performed the autopsy of Calloway's body, testified that Calloway died as the result of three gunshot wounds—one in his back that exited the body through his chest, and two in his face; he classified Calloway's death as a homicide. Angelo Strong testified that the day after Calloway had gone missing, Brooks called him and said, "I put two in your boy," and when Strong asked what he meant, Brooks said, "I put two in your boy's head." That admission alone is sufficient to corroborate Wright's testimony and support the denial of Brooks's motion for directed verdict. *See Boldin v. State*, 373 Ark. 295, 283 S.W.3d 565 (2008). Wright's testimony was also corroborated by Dr. Kokes's testimony that Calloway had two bullet wounds to his head and one shot to his back that exited his chest.

Several witnesses corroborated the testimony of Wright when they testified that Brooks, Wright, and Calloway were together that day, and they had seen Brooks with a gun. McGowan testified that he gave Brooks and Wright plastic gloves, which corroborated Wright's testimony. Wright testified that he led Calloway and Brooks to a vacant house, and Calloway was shot in the bedroom where officers testified they found him after receiving an anonymous tip. Finally, a video taken the night of the murder contained Brooks's voice and the identified plastic glove on the hand of one of the persons in the video. Therefore, we hold that the testimony of the accomplice was sufficiently corroborated, and the trial court did not err in denying Brooks's motion for directed verdict.

Affirmed.

MURPHY and BROWN, JJ., agree.

*Short Law Firm*, by: *Lee D. Short*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.