2009 Ark. 598

**Hutson BURKS, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 09–609.**

Supreme Court of Arkansas.

Dec. 3, 2009.

Rehearing Denied Jan. 28, 2010.

David Cannon, Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., by: Valerie Glover Fortner, Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice.

Appellant Hutson Burks was convicted in Pulaski County Circuit Court of aggravated robbery and theft of property. The jury found him guilty of robbing two employees of the Metropolitan National Bank in Little Rock at gun point as they were refilling the drive-thru ATM machine. He took several thousand dollars in cash. Appellant was sentenced to concurrent terms of twenty-seven and eighteen years, respectively, in the Arkansas Department of Correction. Appellant raises two points of error on appeal. First, he asserts that the circuit court erred in denying his motion to suppress the testimony of Emma Mickles because the State had secured her testimony illegally through a writ of error coram nobis. Second, he argues that the circuit court erred in denying his motion for a mistrial when, during her testimony, Mickles impermissibly made reference to Appellant's prior drug use.

A three-judge panel of the Arkansas Court of Appeals, in an unpublished opinion, affirmed the circuit court on both points. *Burks v. State*, CACR 08–1369, 2009 WL 1478003 (Ark.Ct.App. May 27, 2009) (unpublished). The court of appeals held that Appellant had no standing to attack Mickles's sentence reduction

through a writ of error coram nobis. *Id.* The appellate court also found that the circuit court did not abuse its discretion in denying Appellant's motion for a mistrial, particularly since Appellant refused the court's offer of a curative instruction. *Id.* Pursuant to Ark. Sup.Ct. R. 2–4(c)(iii), we granted Appellant's petition for review of the decision by the court of appeals. When we grant review of a decision by the Arkansas Court of Appeals, we review the case as though the appeal was originally filed in this court. *See Holt v. State,* 2009 Ark. 482, at 2, 348 S.W.3d 562, 565.

### I. *Appellant's Motion to Suppress the Testimony of Emma Mickles*

Prior to trial, the State learned that Emma Mickles was a potential key witness in connection with the charges against Appellant. At the time, Mickles was already serving a prison sentence as a result of a negotiated plea to several unrelated criminal offenses. In exchange for her testimony at Appellant's trial, the State agreed to support Mickles's motion for a reduced sentence. On July 28, 2008, Mickles petitioned the circuit court for a writ of error coram nobis, based on her recently discovered status as an essential State witness. During the July 31, 2008 hearing on this motion, the circuit judge decided to postpone ruling on the motion until after Appellant's trial, and scheduled a hearing on the matter for a later date. The State also waived any potential issues as to the court's jurisdiction or the timeliness of Mickles's petition for a writ of error coram nobis.

Upon discovering this agreement between the State and Mickles, Appellant moved to suppress Mickles's testimony pursuant to Ark. R.Crim. P. 16.2. Appellant asserted in his motion, as he does now on appeal, that the use of a writ of error coram nobis was improper because the situation did not constitute one of the four instances when the writ may be used. According to Appellant, because the State was essentially buying Mickles's testimony through illegal means, he would be unduly prejudiced if she were allowed to testify. Although the circuit judge denied the motion to suppress, he noted that Appellant would be able to cross-examine Mickles about her agreement with the State.

At trial, Appellant cross-examined both Mickles and her defense attorney about her agreement to testify on behalf of the State. Shortly after Appellant's conviction, the circuit court granted Mickles's petition for a writ of error coram nobis, and, with the State's approval, suspended twelve years on her prior sentence.[1]

In response to Appellant's first point on appeal, the State contends that Appellant does not have standing to challenge the legality of the use of the writ of error coram nobis because (1) he was not a party to the criminal proceedings against Mickles, and (2) he was not directly affected by the circuit court's order granting Mickles's petition. Thus, according to the State, Appellant's argument below and on appeal constitutes an impermissible collateral attack on the circuit court's order reducing Mickles's sentence. Appellant denies the State's claim that he is seeking to challenge the writ per se. His motion, Appellant asserts, simply sought to suppress Mickles's testimony at his trial, although the basis for the motion happened to be that Mickles's testimony was obtained illegally, that is, through the issuance of an allegedly illegal writ of error coram nobis.

We agree that Appellant is not seeking to directly attack Mickles's sen-

---

1. Mickles had originally requested a ten-year     sentence reduction.

tence reduction.[2] Instead, he sought to suppress her testimony at trial. His request, however, is focused on a threshold question: "Whether the writ of error coram nobis was legally granted." Yet, the writ had not been granted at the time Mickles testified. Thus, it is the propriety of the agreement between Mickles and the State that is at issue here.[3]

It is routine in criminal prosecutions for the State to secure testimony under a plea bargain in which a defendant agrees to enter a plea of guilty in return for the State's promise to request a reduced sentence. *Windsor v. State*, 338 Ark. 649, 1 S.W.3d 20 (1999). The appropriateness of such an agreement may be checked by the trial court, as the "sentencing entity": "the prosecutor may only *request* a reduced sentence; the trial court does not have to accept any plea agreement or its terms." *Id.* at 653, 1 S.W.3d at

23. However, Mickles had already pled guilty and been sentenced to prison. Thus, her arrangement with the State was not a plea agreement. In any event, the only possible prejudice resulting from the arrangement would be that Mickles's testimony was tainted by her personal motivation to take the stand-the desire to secure a sentence reduction. The appropriate remedy for witness bias is to allow the defense to cross-examine the witness on the source of that bias and thereby impeach the witness's credibility. *See Gilcrease v. State*, 2009 Ark. 298, 318 S.W.3d 70; *Windsor v. State*, *supra*. In the instant case, Appellant was given an opportunity to cross-examine both Mickles and her defense attorney regarding the nature of Mickles's arrangement with the State. Therefore, we cannot say that the circuit court erred in denying Appellant's motion to suppress.[4]

2. We note that a circuit court's authority to modify a defendant's sentence is an issue of subject-matter jurisdiction that may be raised by a reviewing court sua sponte. *Gavin v. State*, 354 Ark. 425, 125 S.W.3d 189 (2003). Thus, a trial court's loss of jurisdiction over a defendant cannot be waived, and a circuit court may not modify a valid sentence once execution of the sentence has begun. *Id.; Lambert v. State*, 286 Ark. 408, 692 S.W.2d 238 (1985). Moreover, our court has repeatedly held that the grant of a writ of error coram nobis only affords one remedy—a new trial. *See, e.g., Anderson v. State*, 352 Ark. 36, 98 S.W.3d 403 (2003); *Penn v. State*, 282 Ark. 571, 573, 670 S.W.2d 426, 428 (1984). Despite this clear precedent, Mickles's defense attorney filed a petition for writ of error coram nobis, the prosecutor waived all objections, and the circuit judge agreed to "grant whatever you—all agree to." Because the attorneys and the circuit judge abdicated their respective responsibilities as officers of the court, we refer this matter to the Committee on Professional Conduct and the Judicial Discipline and Disability Commission for review.

3. Instead of addressing Appellant's argument on appeal, the dissenting opinions directly attack the circuit court's reduction of Mick-

les's prison sentence in a separate case. Moreover, despite the fact that the circuit court clearly had subject-matter jurisdiction to entertain Mickles's petition for writ of error coram nobis in her case at the time Appellant's motion to suppress was denied in his case, Justice Wills cites *Urich v. State*, 293 Ark. 246, 737 S.W.2d 155 (1987), in her dissent as support for the proposition that a circuit court's lack of subject-matter jurisdiction is subject to collateral attack. Yet, the *Urich* case involved a defendant who sought to collaterally attack his own conviction, not that of another, in a separate case. In essence, the dissenting opinions propose a sua sponte review of a case that is not before us.

4. We also note that, both below and on appeal, Appellant argues that the circuit court violated his rights to due process and equal protection by denying his motion to suppress and allowing Mickles to testify. Appellant failed to obtain a specific ruling on his constitutional arguments so they are not preserved for appellate review. *Raymond v. State*, 354 Ark. 157, 118 S.W.3d 567 (2003). In any event, because Appellant failed to adequately develop these constitutional challenges on appeal, we decline to address them now. *See,*

## II. *Appellant's Motion for a Mistrial*

During a pretrial hearing, Appellant moved in limine to exclude any testimony regarding Appellant's prior drug use or the fact that he used the money he obtained from the robbery to buy drugs. The circuit court held that the existence of large sums of money in Appellant's possession was relevant, but that the State needed to obtain specific permission before presenting any testimony that Appellant used the money to buy drugs. At trial, Mickles testified that some time after the date of the robbery, Appellant asked her to go to Chicago with him, but she refused. When the prosecutor asked her why, she explained that Appellant's cocaine use had made him paranoid. Appellant promptly objected, whereupon the prosecutor apologized and explained that he had expected Mickles to answer the question differently. He suggested that the court give a limiting instruction to the jury, which the judge offered to do. Appellant declined the offer of a curative instruction and instead moved for a mistrial.

On appeal, Appellant argues that Mickles's statement would have impermissibly led the jury to believe that Appellant robbed the bank in order to finance his cocaine addiction. Our standard of review for appeals of an order denying a mistrial motion is well established, and a circuit court's refusal to grant a mistrial is difficult to overcome:

A mistrial is an extreme and drastic remedy that will be resorted to only when there has been an error so prejudicial that justice cannot be served by continuing with the trial or when the fundamental fairness of the trial has been manifestly affected. The circuit court has wide discretion in granting or denying a mistrial motion, and, absent

*e.g., State v. Harris,* 372 Ark. 492, 277 S.W.3d

an abuse of that discretion, the circuit court's decision will not be disturbed on appeal. Among the factors this court considers on appeal in determining whether or not a circuit court abused its discretion in refusing to declare a mistrial are whether the prosecutor deliberately induced a prejudicial response and whether an admonition to the jury could have cured any resulting prejudice.

*King v. State,* 361 Ark. 402, 405, 206 S.W.3d 883, 885 (2005) (citations omitted). It is also well settled that an admonition to the jury usually cures a prejudicial statement unless it is so patently inflammatory that justice could not be served by continuing the trial. *Zachary v. State,* 358 Ark. 174, 188 S.W.3d 917 (2004). Where the possible prejudice could have been cured by an admonition to the jury, this court has found no abuse of discretion when defense counsel has refused the circuit court's offer of such a curative instruction. *Ferguson v. State,* 343 Ark. 159, 33 S.W.3d 115 (2000). Furthermore, we have held that remarks, which amount to inadvertent references to previous illegal conduct, may be cured by an admonition from the circuit court ordering the jury to disregard the statement. *Hall v. State,* 314 Ark. 402, 862 S.W.2d 268 (1993); *Mitchael v. State,* 309 Ark. 151, 828 S.W.2d 351 (1992).

In the instant case, the State did not solicit Mickles's spontaneous remark about Appellant's prior drug use and immediately apologized for it. More importantly, Appellant refused the court's offer of an admonition to the jury. Any resulting prejudice could have been cured by such a curative instruction. *See Williams v. State,* 316 Ark. 694, 874 S.W.2d 369 (1994) (evidence of defendant's drug use). Accordingly, we conclude that the circuit

568 (2008).

court did not abuse its discretion in denying Appellant's motion for a mistrial.

Affirmed.

HANNAH, C.J., CORBIN AND WILLS, JJ., dissent.

HANNAH, C.J., dissenting.

I agree with Justice Wills's conclusion in her dissent that this case must be reversed and remanded because Mickles's testimony should have been excluded as illegally obtained evidence. I also agree that admission of the evidence was not harmless error. There is no question that Mickles's testimony was illegally obtained. The law on the issue is clear. It is elemental criminal law that once a legal sentence has been put into execution, the circuit court loses jurisdiction to modify that sentence. *Green v. State*, 2009 Ark. 113, at 7, 313 S.W.3d 521, 526; *Emerson v. Boyles*, 170 Ark. 621, 629–30, 280 S.W. 1005, 1008 (1926). Where a circuit court has attempted to modify a sentence in the absence of jurisdiction, this court has raised the issue on its own motion because the circuit court lacked subject-matter jurisdiction. *Gavin v. State*, 354 Ark. 425, 429, 125 S.W.3d 189, 191 (2003). A circuit court's loss of jurisdiction is always open, cannot be waived, can be questioned for the first time on appeal, and may even be raised by this court. *Id.*, 125 S.W.3d at 191. A circuit court's loss of subject-matter jurisdiction to modify a sentence has been addressed by this court on its own motion. *See Id.*, 125 S.W.3d at 191. Once a sentence has been put into execution, the circuit court loses subject-matter jurisdiction over the defendant. *See id.*, 125 S.W.3d at 191.

Thus, the circuit court lacked subject-matter jurisdiction to modify Mickles's sentence and, therefore, acted outside the law in doing so. Further, when the State offered to waive subject-matter jurisdiction, it attempted to act outside its authority because subject-matter jurisdiction cannot be conferred by consent of the parties. *Beulah v. State*, 352 Ark. 472, 474, 101 S.W.3d 802, 804 (2003). In addition, the parties and the circuit court attempted to utilize the writ of error coram nobis. The purpose of the writ is to address alleged error. *See Pitts v. State*, 336 Ark. 580, 582, 986 S.W.2d 407, 409 (1999). It is not a vehicle for circumventing subject-matter jurisdiction and modifying a sentence that has been put into execution.

Mickles's testimony was illegally obtained, and Burks has standing to challenge it. Illegally obtained evidence is subject to exclusion. *See* Ark. R.Crim. P. 16.2.[1] The purpose of the exclusionary rule is to deter misconduct by the authorities. *See Landrum v. State*, 326 Ark. 994, 1000, 936 S.W.2d 505, 507 (1996). Exclusion is applicable in a number of contexts including where "[p]rosecutors must know" that their conduct is "unreasonable and unconscionable." *See Jolly v. State*, 358 Ark. 180, 196, 189 S.W.3d 40, 49 (2004) (unreasonable and unconscionable delay in sentencing). While more typically application of the exclusionary rule is concerned with "cases involving violations of rights guaranteed by the United States Constitution," there are other "independent and adequate grounds in the law of Arkansas" to exclude evidence unlawfully obtained. *State v. Shepherd*, 303 Ark. 447, 454, 798 S.W.2d 45, 49 (1990) ("pretextual and un-

1. The majority's analysis on whether Burks suffered prejudice given his opportunity to cross examine Mickles begs the issue presented to this court. Burks asserts on appeal that Mickles's testimony "is subject to exclusion under A.R.C.P. Rule 16.2 as evidence illegally obtained." Therefore, the question of whether governmental conduct requires exclusion is at issue. That a criminal defendant benefits by exclusion of the evidence is not at issue, making the reference by the majority to prejudicial harm irrelevant in the present case.

lawful use of a prosecutor's subpoena power"). Burks had standing to challenge the introduction of illegally obtained evidence, and the circuit court erred in denying his motion. Mickles's testimony should have been excluded based on this deliberate misconduct by the State. This case should be reversed and remanded for a new trial.[2]

I write further because my concerns are not entirely resolved by reversing and remanding Burks's case for a new trial. Our duty to preserve the public's confidence and trust in the judiciary's impartiality and integrity requires that we review the conduct of the prosecutor, Mickles's attorney, and the circuit court in modifying Mickles's sentence and Mickles's reduced sentence.

On the record before us, it appears that the prosecutor, knowing he lacked authority to do so, offered to obtain a reduction in a sentence already under execution. The prosecutor then offered to waive subject-matter jurisdiction even though it is elemental law that subject-matter jurisdiction may not be waived. This attempted waiver of such an elementary principle of law heightens concern about the culpability of the conduct. What makes this whole transaction even more disturbing is that when the circuit court was presented with a request that it act without jurisdiction and reduce the sentence, the circuit court responded as follows: "No, I'll do it ... I'll do what you-all are asking. Absolute-

ly, I will ... I just want to make sure she ends up upholding her part of the deal ... and if she does her part of the deal, then I'll grant whatever you-all want to whatever you-all agree to."

What record we have on modification of Mickles's sentence[3] leaves the impression that the judicial process was abused. While I agree that referring counsel to the Arkansas Committee on Professional Conduct and the circuit judge to the Arkansas Judicial Discipline and Disability Commission is proper to address misconduct by those referred, the referrals do nothing to address the possible injury to the public trust and confidence in the impartiality and the integrity of the judiciary. Having been apprised of this apparent abuse, we may not simply refer the actors to our Committee and Commission and imagine we have done our job. We must take action to preserve the integrity of the judiciary where it appears that the law has been violated and a void order has been entered modifying a criminal sentence.

Protection of the public confidence and trust in the judiciary requires that we act. A prosecutor is held to a "high standard because the State's attorney acts in a quasi-judicial capacity." *Anderson v. State,* 353 Ark. 384, 394, 108 S.W.3d 592, 598 (2003). A prosecutor is under a duty to use honorable and lawful means to secure a conviction. *Id.,* 108 S.W.3d at 598. The

**2.** The majority asserts that the dissents errantly attempt to carry out a sua sponte review of a case "that is not before us." This implies that this court is without authority to exercise its obligations under our duties as the superintending court under the Arkansas Constitution and our duties of superintending jurisdiction as a common law court of last resort. This court should have and does have the power to reach down and make right actions of the lower court and counsel that are illegal and pose a threat to the integrity and public confidence in the judiciary. As I discuss below, this court not only has the authority, but

it has the duty to issue a writ of certiorari in the Mickles cases to examine whether illegal action was taken. I also note that the majority errantly asserts that "the dissenters cite" *Urich v. State,* 293 Ark. 246, 737 S.W.2d 155 (1987).

**3.** The record in the present case includes a transcript from the hearing when the circuit court purported to reopen Mickles's prior criminal case in the circuit court and hear the petition for writ of error coram nobis.

circuit court is expected to follow the law. Here, the circuit court modified Mickles's sentence after it had already been put into execution. A judge is under a duty to maintain the integrity of the judiciary. Ark.Code Jud. Conduct Canon 1. Further, a judge is to be faithful to the law. Ark. Code Jud. Conduct Canon 2(B)(2). Our concern should be further heightened because Mickles and the State, who reached the purported agreement to modify the sentence, are the beneficiaries and unlikely to challenge the circuit court's actions.

We may and should act sua sponte. "When a matter involves more than just the individuals, and involves a reflection on the courts and the judicial system, there is more willingness to consider it sua sponte." Robert A. Leflar, *Appellate Judicial Opinions* 130 (1974). We have jurisdiction to act. We may act under the superintending control granted this court in section 4 of amendment 80 to the Arkansas Constitution. We may also exercise superintending jurisdiction as a common law court of last resort:

> Superintending jurisdiction is one of three types of jurisdiction held by courts of last resort that also includes appellate and original jurisdiction. *Cohen v. State*, 732 So.2d 867 (Miss.1998). Original and superintending control are most often enforced through issuance of writs. *Id.* Superintending control is an extraordinary power that is hampered by no specific rules or means. *Id.* By virtue of the jurisdiction, the court may "invent, frame, and formulate new and additional means, writs and processes." *Id.* (quoting *State v. Roy*, 40 N.M. 397, 422–23, 60 P.2d 646, 662 (1936)). The court is bounded only by the exigencies that call

for its exercise. *Cohen, supra.* However, the jurisdiction is used with caution and forbearance to further justice and to secure order and regularity in judicial proceedings where no ordinary remedies are adequate.

*Foster v. Hill,* 372 Ark. 263, 268, 275 S.W.3d 151, 155 (2008). In exercising our superintending control or superintending jurisdiction, we may issue writs such as mandamus, or certiorari. *See Payne v. McCabe,* 37 Ark. 318, 322 (1881). Certiorari may be used to bring up the record from below so that this court may examine the record to determine if we should correct errors. *Id.* In the instant case, we should issue a writ of certiorari to bring before this court all records in cases prosecuted against Mickles. We should then allow the State and Mickles to file briefs in the matter.[4] We may then determine if action by this court is necessary to preserve the integrity and public confidence in the judiciary.

CORBIN, J., joins.

WILLS, J., dissenting.

The majority holds that the only prejudice arising from the circuit court's denial of appellant Hutson Burks's motion to suppress was that Emma Mickles's testimony was "tainted by her personal motivation to take the stand," and that any prejudice was cured by the fact that Burks was given the opportunity to cross-examine her. Because I conclude that the underlying procedure by which Mickles's testimony was obtained was fundamentally and fatally flawed, I must respectfully dissent.

The majority notes that Burks's argument was that Mickles's testimony was illegally obtained through an improper

---

4. Within the record in the present case is a transcript of the hearing held in Mickles's cases on the petition for a writ of error coram nobis. Six cases against Mickles are noted in that hearing; however, Mickles asserted there were more cases that would be affected by the order purportedly modifying her sentence.

writ of error coram nobis, but then concludes that, because the writ had not been granted at the time Mickles testified, the propriety of the writ is not at issue. The majority in effect denies Burks any opportunity to challenge the use of the writ underlying the agreement, concluding that he may not do so prior to its being granted. Any challenge to the writ after its issuance, however, would come too late for purposes of Burks's suppression motion and would surely be assailed as collateral. The majority instead addresses only the propriety of the agreement, concluding that any prejudice that might have occurred was cured by cross-examination. The essential feature of the agreement, however, was the State's promise to support the petition for the writ. In my view, therefore, the court's power to entertain the petition for the writ must be addressed.

The writ of error coram nobis is an ancient writ developed from the common law of England that provides a remedy where the convicted criminal defendant is not protected by his right of appeal because the record on its face discloses no error to the appellate court. *See Magby v. State*, 348 Ark. 415, 72 S.W.3d 508 (2002) (per curiam) (citing Henry Woods, *The Writ of Error Coram Nobis in Arkansas*, 8 Ark. L. Bul. 15 (1940)). A writ of error coram nobis is an extraordinarily rare remedy, more known for its denial than its approval. *State v. Larimore*, 341 Ark. 397, 17 S.W.3d 87 (2000). Literally, "coram nobis" means our court, in our presence, before us. *Penn v. State*, 282 Ark. 571, 670 S.W.2d 426 (1984). The essence of the writ of error coram nobis is that it is addressed to the very court that rendered the judgment where injustice is alleged to have been done, rather than to an appellate or other court. *Black's Law Dictionary* 337 (6th ed.1990).

The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature that are found in one of four categories: insanity at the time of trial, a coerced guilty plea, material evidence withheld by the prosecutor, or a third-party confession to the crime during the time between conviction and appeal. *Pitts v. State*, 336 Ark. 580, 986 S.W.2d 407 (1999). Coram nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. *Penn, supra*. The only relief available through a writ of error coram nobis is a new trial. *Id.*

Clearly, coram nobis may not be used to bring about the *reduction* or *modification* of a sentence. *Id.* Again, the remedy, if the writ is warranted, is a new trial. In my view, the circuit court did not have subject-matter jurisdiction to consider this coram nobis petition, which sought only to modify Mickles's sentence. Subject-matter jurisdiction is a court's authority to *hear and decide* a particular type of case. *Edwards v. Edwards*, 2009 Ark. 580, 357 S.W.3d 445. A court lacks subject-matter jurisdiction if it *cannot hear the matter* under any circumstances and is *wholly incompetent to grant the relief sought. Id.* (emphasis added). A trial court does not have jurisdiction to hear, much less grant, a writ of error coram nobis as a vehicle to reduce or modify a sentence. Here, the only relief requested on the face of the petition for the writ was a request for resentencing. Therefore, the essence of the agreement was the State's promise to support a petition that the circuit court did not have jurisdiction to consider. I fail to see how this court can uphold the "propriety" of the agreement under these circumstances.

Although the State argues that Burks lacked standing to challenge the coram

nobis proceedings, I disagree. The fundamental issue is the absence of jurisdiction. This court has consistently held that a trial court's loss of jurisdiction over a defendant is always open, cannot be waived, can be questioned for the first time on appeal, and can even be raised by this court. *Gavin v. State,* 354 Ark. 425, 429, 125 S.W.3d 189, 191 (2003); *Moseley v. State,* 349 Ark. 589, 80 S.W.3d 325 (2002). The prosecution's attempts to "waive" subject-matter jurisdiction below in an attempt to secure the writ were thus to no avail. In addition, orders entered without subject-matter jurisdiction are void and cannot be enforced. *See Pike v. State,* 344 Ark. 478, 40 S.W.3d 795 (2001); *Young v. Smith,* 331 Ark. 525, 964 S.W.2d 784 (1998).

In its footnote 2, the majority appears to agree that subject-matter jurisdiction was lacking with regard to the coram nobis proceeding. *See, e.g., Gavin v. State,* 354 Ark. 425, 125 S.W.3d 189 (2003) (a trial court loses jurisdiction to modify or amend an original sentence once the sentence is put into execution). What the majority fails to consider, however, is that a circuit court's lack of subject-matter jurisdiction *is subject to collateral attack. See Urich v. State,* 293 Ark. 246, 247, 737 S.W.2d 155, 155 (1987). Therefore, I would hold that Burks has standing to challenge both the agreement that allowed the State to obtain and use Mickles's testimony and the exploitation of the writ of error coram nobis in obtaining her testimony.

In his motion to suppress, Burks argued that, by using an improper writ of error coram nobis, the State had essentially purchased Mickles's testimony in an illegal fashion. Burks sought suppression under Arkansas Rule of Criminal Procedure 16.2, which provides that a party may object "to the use of any evidence on the grounds that it was illegally obtained." The Rule lists a number of categories of illegally obtained evidence, but it is clear that the list is not exhaustive. *See* Rule 16.2(a) (illegally obtained evidence "shall include but is not limited to ..."). The rule further provides that a motion to suppress evidence should be granted "if the court finds that the violation upon which it is based was substantial." Ark. R.Crim. P. 16.2(e). In determining whether a violation is "substantial," the court is to consider all of the circumstances, including the following:

(i) the importance of the particular interest violated;

(ii) the extent of deviation from lawful conduct;

(iii) the extent to which the violation was willful;

(iv) the extent to which privacy was invaded;

(v) the extent to which exclusion will tend to prevent violations of these rules;

(vi) whether, but for the violation, such evidence would have been discovered; and

(vii) the extent to which the violation prejudiced moving party's ability to support his motion, or to defend himself in the proceedings in which such evidence is sought to be offered in evidence against him.

Ark. R.Crim. P. 16.2(e).

Consideration of these factors should have led the court to grant Burks's motion to suppress Mickles's testimony. The deal by which the testimony was obtained (i.e., the misuse of the writ of error coram nobis), was an extraordinary deviation from lawful conduct, and the violation was clearly willful.[1] In addition, but for this

---

1. At the hearing on the petition for writ of error coram nobis, the circuit court told the prosecuting attorney, "No, I'll do it. I'll do what you all are asking. Absolutely I will. I

gross deviation, it is unclear that Mickles would have testified against Burks.

The final factor is the extent to which the violation prejudiced Burks's ability to defend himself in the proceedings. I note that when Burks renewed his motion to suppress, the State argued that he lacked standing to contest the deal that had been struck. Although he may have been afforded an opportunity to cross-examine Mickles, it is apparent that he was greatly prejudiced by the introduction of her testimony. Indeed, at a hearing in Mickles's case after Burks's trial was over, the prosecuting attorney agreed with Mickles's attorney's request to reduce her sentence by an additional two years, informing the trial court that he did "not think we could have convicted Hutson Burks without Ms. Mickles's cooperation." The error was patent, and it was plainly not harmless. I would reverse Burks's conviction and remand for a new trial.

Justice in this state must not be effected through the blatant misuse of common law writs, or through purported waivers of subject-matter jurisdiction. Justice must be effected through steadfast application of the rule of law—*always* the rule of law. I respectfully dissent.

CORBIN, J., joins.

just want to make sure she ends up upholding her part of the deal, and if she does, I'll grant whatever you all agree to."