Cite as 2014 Ark. 40

# SUPREME COURT OF ARKANSAS

No. CR–13–390

| | |
|---|---|
| RAYMOND C. SANDERS, JR.<br>APPELLANT | **Opinion Delivered** January 30, 2014 |
| V. | APPEAL FROM THE HOT SPRING COUNTY CIRCUIT COURT<br>[NO. CR–90–58] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE JOHN LINEBERGER, JUDGE |
| | AFFIRMED. |

**CLIFF HOOFMAN, Associate Justice**

After his original convictions and sentences for the 1989 murders of Charles and Nancy Brannon were vacated and set aside, appellant Raymond C. Sanders, Jr., was retried by a jury and found guilty of two counts of capital murder, for which he received sentences of life without parole. On appeal, Sanders argues that the circuit court erred by (1) permitting Byron Hopes to testify even though his testimony was procured through an illegal sentence reduction; (2) holding that the cross-examination of Hopes about the deal would open the door to testimony about Sanders's other murder case; (3) refusing to prohibit the State from using transcripts of witness testimony from Sanders's first trial; and (4) excluding part of the prior testimony of Bill Keeling. We have jurisdiction over this appeal pursuant to Ark. Sup. Ct. R. 1-2(a)(2), (7) (2013). We affirm.

Sanders has brought five prior appeals in connection with his convictions and sentencing for the murders of the Brannons, which occurred in Hot Spring County in

SLIP OPINION

November 1989. His first trial was held in February 1991 in the Grant County Circuit Court on a change of venue from Hot Spring County, and Sanders was sentenced to death on each count. This court affirmed the convictions on appeal but reversed the sentences and remanded for resentencing because a prior murder conviction used as an aggravating circumstance had since been overturned on appeal. *Sanders v. State*, 308 Ark. 178, 824 S.W.2d 353 (1992) ("*Brannon I*").[1] This prior conviction of Sanders for capital murder was connected with the murder of Frederick LaSalle in December 1989, and the trial on this murder charge occurred in March 1990, prior to the trial in the Brannon murders. Sanders's conviction in the LaSalle case was reversed, *Sanders v. State*, 305 Ark. 112, 805 S.W.2d 953 (1991) ("*LaSalle I*"), and a second trial was held in February 1992, after which Sanders was again convicted of capital murder and received a life sentence. This conviction was affirmed on appeal. *Sanders v. State*, 310 Ark. 510, 838 S.W.2d 359 (1992), *cert. denied*, 513 U.S. 1162 ("*LaSalle II*").

After the resentencing hearing in the Brannon case in August 1992, Sanders was again sentenced to death, and we affirmed. *Sanders v. State*, 317 Ark. 328, 878 S.W.2d 391 (1994) ("*Brannon II*"). Sanders subsequently filed a Rule 37 petition for postconviction relief, which was denied by the circuit court without a hearing. On appeal, this court reversed and remanded for an evidentiary hearing on Sanders's petition. *Sanders v. State*, 352 Ark. 16, 98

---

[1]Because there is an unrelated murder case involving Sanders that is relevant to the issues raised in this appeal, we refer to our prior opinions by the name of the victim(s) in each case, as Sanders does in his brief.

SLIP OPINION

S.W.3d 35 (2003), *supp. op. upon reh'g*, 352 Ark. 520, 102 S.W.3d 480 (2003) ("*Brannon III*"). During the hearing, evidence of a possible *Brady* violation arose, and the circuit court halted the proceedings while Sanders filed in this court a petition to reinvest jurisdiction in the circuit court to consider a petition for writ of error coram nobis. We granted the petition in part, so that Sanders could proceed on his due-process claim of a *Brady* violation. *Sanders v. State*, 374 Ark. 70, 285 S.W.3d 630 (2008) ("*Brannon IV*").

A joint hearing was held before the circuit court on Sanders's petition for postconviction relief pursuant to Rule 37 and on his petition for writ of error coram nobis. The circuit court granted Sanders's petition for writ of error coram nobis and vacated his convictions and sentences, finding that the prosecution's failure to reveal information about one of its witnesses prejudiced Sanders's right to a fair trial. The court denied relief based on Sanders's Rule 37 petition, however, and Sanders appealed to this court. We dismissed his appeal as moot, holding that once the circuit court granted Sanders's petition for writ of error coram nobis, there was no longer a sentence from which postconviction relief could be sought. *Sanders v. State*, 2011 Ark. 127 ("*Brannon V*"). Sanders was retried for the Brannon murders in October 2012, and the State waived the death penalty. He was again convicted of both counts of capital murder and was sentenced to life without parole. He now appeals from these convictions.

A detailed recitation of the underlying facts has been previously set forth in our opinion in *Brannon I*; however, briefly, Charles and Nancy Brannon were killed by gunshot wounds. Charles's body was found near a church in Malvern on November 21, 1989, and

Nancy's body was found in the surrounding area two days later, a short distance from the Brannons' truck. Their home had also been ransacked. The gun believed to have been used in the murders was pawned several weeks later by a man identified as Sanders, along with an unidentified female. Also, several pieces of jewelry identified as Nancy's were pawned by Sanders approximately one week after the murders. There was also evidence presented that Charles was known to carry large amounts of cash on his person; that Sanders had worked for Charles and had been to the Brannons' home on many occasions; that acquaintances had seen Sanders with a large sum of money in the days following the Brannons' murder; and that when one acquaintance questioned Sanders about a gun and some jewelry seen at his house after the murders, he replied that "there were some things she didn't need to know."

In his first point on appeal, Sanders argues that the circuit court erred in permitting Byron Hopes to testify even though his testimony was procured through an illegal Rule 37 procedure. Prior to trial, Sanders filed a motion to exclude the testimony of Hopes, who was his codefendant in the LaSalle case and who had testified against him in *LaSalle II*. Sanders argued that Hopes's testimony in *LaSalle II* had been obtained by a collusive and untimely Rule 37 proceeding. As a result of that proceeding, Hopes's original plea of guilty to the LaSalle murder, for which he had received a forty-year sentence, was vacated, and he entered a new guilty plea, receiving a reduced sentence of twenty years' imprisonment. In addition to asserting that this postconviction proceeding was untimely, as it was filed more than ninety days after Hopes's original plea was entered on July 5, 1990, Sanders argued that it was procured by collusion because the prosecutor in *LaSalle II*, Dan Harmon, had served as

Hopes's defense counsel when he had entered his plea in 1990. Sanders asserted that a special prosecutor was appointed for the purposes of Hopes's Rule 37 proceeding and that Harmon conceded in that proceeding that he had been ineffective as Hopes's counsel. The circuit court then granted Hopes's Rule 37 petition and vacated his plea of guilty. Sanders argued in his pretrial motion that Hopes's testimony should be suppressed because the evidence was obtained illegally and in violation of his due-process rights. The transcript from Sanders's postconviction evidentiary hearing was introduced to support his allegations.

After a pretrial hearing, the circuit court denied Sanders's motion to exclude Hopes's testimony, relying on this court's decision in *Burks v. State*, 2009 Ark. 598, 359 S.W.3d 402, in which we affirmed the trial court's decision to admit the testimony of a witness that was obtained through the use of an illegal writ of error coram nobis. Sanders argues on appeal that the circuit court erred in permitting Hopes to testify because it was "the fruit of the poisonous tree of the illegal deal." He contends that our holding in *Burks* should be overruled, as the prosecutorial misconduct in this case constitutes a denial of his due-process rights. Further, Sanders asserts that this evidence should be suppressed pursuant to the factors set forth in Ark. R. Crim. P. 16.2 (2013), as the integrity of the judicial system is of prime importance, there was a "flagrant and willful violation of the rules of lawful conduct," and exclusion of the evidence will tend to prevent violation of the rules.

We will reverse a circuit court's decision on a motion to suppress only if it is clearly against the preponderance of the evidence. *Boldin v. State*, 373 Ark. 295, 283 S.W.3d 565

5

(2008).[2] We defer to the circuit court's superior position in determining the credibility of the witnesses and resolving any conflicts in the testimony. *Id.*

The State responds that the circuit court did not err in admitting Hopes's testimony because the remedy for a plea agreement that is improperly obtained through the use of a postconviction proceeding is cross-examination. In support of its argument, the State cites *Burks*, *supra*, where we held that the appropriate remedy for a witness's potential bias resulting from a plea agreement is to allow the defense to cross-examine the witness on the source of that bias and thereby impeach the witness's credibility. *See also Gilcrease v. State*, 2009 Ark. 298, 318 S.W.3d 70 (A defendant has wide latitude in cross-examining a witness on possible bias resulting from the expectation of a plea offer by the State in exchange for the testimony of the witness.); *Windsor v. State*, 338 Ark. 649, 1 S.W.3d 20 (1999) (The trial court was correct in not excluding the testimony of a witness who obtained a reduced sentence in exchange for his testimony against the defendant, as the appellant had ample opportunity to cross-examine the witness concerning his plea agreement.).

With regard to Sanders's allegation that Hopes's postconviction relief was obtained through collusion by the prosecutor, special prosecutor, Hopes's defense counsel, and the trial judge, the State notes that Sanders failed to support such an allegation by calling each of them to testify about the circumstances surrounding the prior deal. The State further asserts that

---

[2]While the State asserts that Sanders's pretrial motion to exclude Hopes's testimony is appropriately reviewed as a motion in limine rather than as a motion to suppress, we disagree, as his primary contention is that the evidence should be excluded because it was illegally obtained. *See Burks v. State*, *supra.*

at the time of the charged offenses against both Hopes and Sanders, Ark. R. Crim. P. 37, which had a three-year time limit on filing, had recently been abolished and was not reinstated with its present-day time limit until 1991. Thus, the State contends that Sanders has failed to prove misconduct on the part of Harmon or anyone else involved in Hopes's postconviction proceeding.

We find it unnecessary to determine whether Hopes's plea agreement was illegally obtained in light of our holding in *Burks*, *supra*. The postconviction proceeding in *Burks* was clearly illegal, yet this court concluded that the proper remedy was cross-examination of the witness, not suppression of the testimony. *Id*. We also decline to overrule *Burks*, as requested by Sanders. While Sanders argues that prosecutorial and judicial misconduct deprive the defendant of due process, we agree with the State that the aim of due process is not punishment of society for the misdeeds of a prosecutor, but avoidance of an unfair trial for the accused. *See Smith v. Phillips*, 455 U.S. 209, 219 ("[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."). Thus, the circuit court's denial of Sanders's motion to suppress Hopes's testimony is not clearly erroneous, and we affirm on this point.

Sanders next contends that the circuit court abused its discretion by ruling that cross-examination of Hopes about his allegedly illegal sentence reduction would open the door to testimony about Sanders's other murder case. After the circuit court had denied his motion to suppress Hopes's testimony, Sanders then moved in limine, seeking to limit the testimony provided by Hopes to the fact that he had received a deal to testify in another case involving

SLIP OPINION

himself and Sanders, without identifying the specific case or the details of the testimony adduced in that case.  A lengthy colloquy ensued between the parties and the court, the final portion of which is set out below:

> DEFENSE COUNSEL: Your Honor, so you will allow them to elicit the actual facts he testified to? I'm just want . . .
> COURT: Well, to the extent that he fulfilled his obligations under the deal. Can I do that?
> PROSECUTOR: Yes, your Honor.
> COURT: I think you're entitled to do that, cause that's simply showing what the full deal is. You're opening the door and saying there was a deal, and, you know, without allowing them to cross-examine on what the deal was, I don't think that'd be fair.
> PROSECUTOR: Judge, he's wanting to say, 'Here was the price of the bull,' and the jury is supposed to draw inference as just from the price of the bull without them seeing the bull.
> COURT: Yeah.
> PROSECUTOR: And they can't do that, Judge.
> COURT: I agree.
> PROSECUTOR: That's why his testimony that he gave in response for the alleged deal is admissible.
> COURT: Yeah. Now, to some extent– you know, I don't know what the testimony is going to be, and – to some extent I'm sort of surmising what the testimony may be. So you feel free to object at any time you want . . .
> DEFENSE COUNSEL: Your Honor, I understand.
> COURT: . . . to during the course of that testimony. But I think we ought to know generally, though, once you raise the deal, they're entitled to develop fully what that deal was, and did he fulfill his obligations.

Due to the circuit court's ruling, Sanders chose not to cross-examine Hopes about the deal he had made in exchange for his prior testimony so that the door would not be opened to details about the other case that would be prejudicial to Sanders, such as that it was a murder case.  Instead, Sanders introduced evidence showing that Hopes was a felon and had been convicted of murder.  In a proffer outside the presence of the jury, Sanders obtained testimony from Hopes that he and Sanders were both charged with capital murder in the

death of LaSalle, that Hopes pled guilty to first-degree murder and received forty years' imprisonment, that Harmon was his attorney at the time, that Harmon then became the prosecutor against Sanders in *LaSalle II*, that Hopes had filed a potentially untimely Rule 37 petition, that his petition was granted and a new trial was ordered, that he again pled guilty to the charge and received a reduced sentence of twenty years, and that he had then testified against Sanders in *LaSalle II*. In its proffer in response, the State only asked Hopes whether he had testified truthfully and whether he had been promised anything or threatened in connection with his present testimony.

The State then noted that it would not have objected to any of that testimony, and Sanders stated that it was his position that the proffered testimony should not have opened the door to the details of the LaSalle case. The circuit court stated, "I think you would open the details of the plea, is what we would have. I was not about to retry the LaSalle case or allow any of that. But I did advise you though, that they could go into details about the plea that he made which in itself would've reflected that the plea was made in the LaSalle case, instead of in this case."

A circuit court's ruling on a motion in limine is not reversed absent an abuse of discretion. *Mhoon v. State*, 369 Ark. 134, 251 S.W.3d 244 (2007). An abuse of discretion occurs when the circuit court acts arbitrarily or groundlessly. *Isom v. State*, 356 Ark. 156, 148 S.W.3d 257 (2004).

Sanders argues that the circuit court abused its discretion in its ruling, as he was entitled to cross-examine Hopes about the illegal deal he obtained, but if that opened the door to the

admission of evidence about Sanders's other murder conviction, he contends that that would be unfairly prejudicial to him. Sanders asserts that he wished to keep out the fact that Hopes's deal included testimony in another murder case but that he did want to demonstrate that Hopes had received a substantial benefit for his testimony against Sanders.

We find no abuse of discretion on the record before us. While an accused is accorded a wide latitude in cross-examination to impeach the credibility of a witness against him, the circuit court may also impose reasonable limits on what testimony is admitted based upon concerns about harassment, prejudice, waste of time, confusion of issues, or interrogation that is repetitive or only marginally relevant. *Gilcrease*, *supra*. Here, the circuit court initially ruled that if Sanders questioned Hopes about a previous deal, then the State could introduce evidence about the details of the deal that he received. It was well within the circuit court's discretion to allow this limited explanation. As the circuit court noted, the amount of a reduction in a witness's sentence due to a plea deal has little meaning unless there is information on the specific charge involved. The circuit court repeatedly stated that only the full details of the plea agreement would be allowed and that it would not permit the LaSalle case to be retried through Hopes's testimony.

In addition, the parameters of the testimony that would have been allowed by the circuit court were not clearly defined, and the court stated that it would reserve ruling on specific testimony with regard to the LaSalle case until an objection was raised by Sanders. Because Sanders chose not to cross-examine Hopes about the deal, he has failed to demonstrate any error by the circuit court with regard to the admission of specific evidence.

*See Johnson v. State*, 2013 Ark. 494, ___ S.W.3d ___ (holding that argument as to admissibility of specific evidence was waived where circuit court's ruling on the motion in limine was not definitive and appellant failed to contemporaneously object to the testimony at trial). Furthermore, in the testimony of Hopes proffered by Sanders, he himself adduced the details of the plea agreement, and both parties agreed that the testimony presented during the proffer was not objectionable. Therefore, Sanders has failed to demonstrate an abuse of discretion by the circuit court with respect to this issue, and we affirm on this point.

In Sanders's third point on appeal, he argues that the circuit court erred in refusing to prohibit the use of trial transcripts of witness testimony from his first trial and his resentencing hearing. Sanders filed a motion in limine prior to his retrial, seeking to prevent the State from using the transcripts of six unavailable witnesses from his 1991 trial and the resentencing hearing in 1992. He argued that these transcripts were inadmissible because his defense attorney at the time of his original trial, William Murphy, had been involved in a criminal conspiracy with Dan Harmon, the prosecuting attorney at that time. At Sanders's postconviction hearing, he presented evidence demonstrating that Murphy and Harmon had been indicted on federal racketeering and conspiracy charges several years after his 1991 trial. Although the circuit court granted Sanders's petition for writ of error coram nobis on the basis of a *Brady* violation, the court denied Rule 37 relief, finding that there was no evidence that Harmon and Murphy's illegal conduct occurred during the time period leading up to and including Sanders's 1991 trial. The court also found that Harmon and Murphy were not actually convicted of the federal charges involving collusion.

Sanders contends that the circuit court's findings were clearly erroneous because Harmon was convicted of a federal charge involving collusion with Murphy. He argues that the Harmon-Murphy conflict rendered his representation by Murphy constitutionally ineffective. He further asserts that the transcripts from his resentencing trial, where he was represented by Tona Demers, are inadmissible because the motive for cross-examination was not the same as in the guilt-innocence phase of his trial and because she was also ineffective.

Pursuant to Ark. R. Evid. 804(a)(4), (5), and (b)(1) (2013), where a declarant is unavailable to testify as a witness due to death or because the proponent is unable to procure his attendance by process or other reasonable means, former testimony of that declarant at a prior hearing is not hearsay and is admissible as long as the party against whom it is now offered had an opportunity and a similar motive to develop the testimony by direct, cross, or redirect examination. In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court made it clear that the prior testimony is admissible only if the defendant had an adequate opportunity to cross-examine the declarant.

With regard to the Harmon-Murphy conflict, as the circuit court at Sanders's postconviction hearing found, there is no evidence that criminal collusion was occurring between Murphy and Harmon at the time of Sanders's original trial in February 1991. At that time, Harmon had only been a prosecuting attorney for approximately one month. Also, the examples cited by Sanders to show that Murphy was ineffective as his counsel are not convincing. As the State asserts, Murphy's cross-examination of one witness, Eddie Watkins, laid the foundation for the later *Brady* claim in the coram nobis proceeding that led to the

grant of a new trial. In addition to Murphy's testimony at the Rule 37 hearing as to his preparation of Sanders's case and his decisions at trial, Robert Jeffrey, Murphy's co-counsel at the trial, also testified. Jeffrey indicated that Murphy made appropriate objections and strategic decisions and adequately cross-examined witnesses. With regard to Sanders's argument regarding the change of venue to Grant County, both Jeffrey and Murphy testified that it was the correct decision given that Sanders had very recently been convicted of another capital murder in Hot Spring County. Under these circumstances, it was not an abuse of discretion for the circuit court to find that the trial transcripts from Sanders's 1991 trial were admissible in his new trial.

With regard to the two trial transcripts from the 1992 sentencing hearing, Sanders asserts that his counsel did not have the same motive to cross-examine the witnesses as in the guilt-innocence phase of the trial and that this, along with her ineffectiveness as counsel, renders these transcripts inadmissible. We agree with the State that there is nothing to demonstrate that Demer's cross-examination of these two witnesses was deficient. As the State asserts, Demer cross-examined all of the witnesses with the intent of establishing residual doubt in the minds of the jurors as to Sanders's guilt, and the record shows that the cross-examination of these witnesses in both the trial and the sentencing hearing were similar. Although Sanders cites several examples of Demer's alleged incompetence, much of which relates to mitigation evidence, none of these examples relates to whether Demer adequately cross-examined the two witnesses at issue here. In fact, Sanders criticizes Demers's focus on proving actual innocence in the resentencing trial, which supports the State's assertion that

the motive for cross-examination at Sanders's resentencing was similar to that at the guilt-innocence phase of his trial. Thus, the circuit court did not abuse its discretion in admitting the trial transcripts of the two witnesses from the resentencing hearing. We affirm on this point.

In his last point on appeal, Sanders argues that the circuit court abused its discretion in denying his motion to admit a portion of the former testimony of Bill Keeling, who had testified in the 1991 trial, that was previously proffered but rejected in that trial. The evidence that Sanders sought to have admitted related to whether two men, named Hunter and Macon, had owed Charles Brannon money and whether Charles had been afraid of a person named "Arlie" or "Ollie." The circuit court in this trial ruled that the proffered evidence was inadmissible, noting that while this issue was not raised on appeal in *Brannon I*, this court did review all adverse rulings under our mandatory review pursuant to Ark. Sup. Ct. R. 11(f) (1992), which is currently found in Ark. Sup. Ct. R. 4-3(i) (2013), and found that no reversible error existed. *Brannon I, supra.* Thus, the circuit court found that this court had tacitly approved the trial court's exclusion of this evidence. The circuit court also found that the original ruling excluding this evidence was correct.

Citing *Camargo v. State*, 337 Ark. 105, 987 S.W.2d 680 (1999), the State asserts that this court's review of the adverse ruling in *Brannon I* constitutes a ruling subject to the limitations of res judicata and that Sanders's argument can be dismissed on that basis. In *Camargo*, this court held that our review pursuant to Ark. Sup. Ct. R. 4-3(h) was the law of the case upon remand and that the law-of-the-case doctrine includes issues that were

implicitly decided. We noted that this rule does not absolutely preclude correction of error, but that it prevents an issue raised in a prior appeal from being reargued in a subsequent appeal unless the evidence differs materially between the two appeals. *Id.* (citing *Kemp v. State*, 335 Ark. 139, 983 S.W.2d 383 (1998)). While Sanders cites *Clemmons v. Office of Child Support Enforcement*, 345 Ark. 330, 47 S.W.3d 227 (2001), in support of his contention that this rule does not absolutely preclude error correction, our decision not to apply the law-of-the-case doctrine in that case was based on the fact that the original ruling on the issue was merely obiter dictum. Here, the evidence sought to be admitted by Sanders is identical to the proffered evidence excluded by the trial court in the 1991 trial and implicitly found not to be reversible error by this court in *Brannon I.* As such, we agree with the State that Sanders's argument on this issue may be affirmed on the basis of law of the case.

As required under Ark. Sup. Ct. R. 4-3(i) (2013), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Sanders, and no prejudicial error has been found.

Affirmed.

HANNAH, C.J., and CORBIN, J., dissent.

**DONALD L. CORBIN, Justice, dissenting.** For the reasons set forth in the dissents in *Burks v. State*, 2009 Ark. 598, 359 S.W.3d 402, I respectfully dissent from the majority's decision in the instant case. In *Burks*, a bare majority of this court affirmed a circuit court's order allowing a witness to testify on behalf of the State despite the fact that such testimony was the result of blatant prosecutorial misconduct. To support its erroneous conclusion, the

*Burks* majority reasoned that the remedy for any prejudice to the appellant was to allow the appellant to cross-examine the witness about any possible witness bias.

Here, the majority, much like the majority in *Burks*, wholly ignores that the purpose of suppressing illegally obtained evidence, pursuant to Ark. R. Crim. P. 16.2 (2013), is to deter misconduct by the authorities, including prosecutors. In fact, this court noted that exclusion of such evidence is applicable in a number of contexts including where "[p]rosecutors must know" that their conduct is "unreasonable and unconscionable." *See Jolly v. State*, 358 Ark. 180, 196, 189 S.W.3d 40, 49 (2004); *see also State v. Shepard*, 303 Ark. 447, 798 S.W.2d 45 (1990).

Despite the State's protestations to the contrary, the evidence here demonstrated that then-prosecutor Harmon engaged in blatant misconduct in order to secure the testimony of Byron Hopes against Appellant in his retrial. The majority, instead of taking the opportunity to rectify the erroneous holding in *Burks*, compounds the error by concluding in this case that "the aim of due process is not punishment of society for the misdeeds of a prosecutor, but avoidance of an unfair trial for the accused." How can we say with any certainty that Appellant received a fair trial when the State was allowed to use illegally obtained evidence?[1] The answer is that we cannot say the trial was fair, nor can we say any error resulting from

---

[1]The majority states that there is no reason to determine whether the evidence was illegally obtained in light of this court's decision in *Burks*. I assert that there is no question that the evidence was illegally obtained and further note that the circuit court recognized the wrongful conduct of the former prosecutor and stated from the bench that but "for the *Burks* case I probably would grant the motion."



the admission of such evidence was harmless. Accordingly, I would reverse and remand for a new trial.

I am authorized to state that HANNAH, C.J., joins in this dissent.

*Jeff Rosenzweig*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.