SLIP OPINION

Cite as 2015 Ark. App. 419

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR-14-499

| | | |
|---|---|---|
| LESTER PHILLIPS | | Opinion Delivered August 26, 2015 |
| | APPELLANT | |
| | | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. CR-12-379] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE BERLIN C. JONES, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

On October 30, 2013, a Jefferson County jury convicted Lester Phillips of murder in the second degree, and he was sentenced as a habitual offender to forty years in the Arkansas Department of Correction. Phillips's sole argument on appeal is that the circuit court abused its discretion when it denied his timely motion for mistrial.[1] For the following reasons, we affirm.

Evidence presented at trial reflected that on June 12, 2012, Mark Sykes and Lester Phillips went to LeRoy Collins's home to purchase drugs. Phillips stayed at Collins's home while Collins and Sykes went to buy drugs. While attempting to purchase the drugs, Collins and Sykes were robbed. When Collins tried to explain to Phillips what happened with the botched drug deal, Phillips fatally shot him in the head execution style.

---

[1]This appeal reaches us for the second time after rebriefing was ordered due to inadequacies in the record and in appellant's addendum, which have now been corrected. *Phillips v. State*, 2015 Ark. App. 138.

Appellant moved for a directed verdict arguing that the State had not introduced sufficient evidence to establish premeditated purpose in causing Collins's death. The court found that premeditation did exist, stating, "There was a drug deal going on, allegedly. There was money displaced. And it would appear that that was reason for the shooting." The court then denied the motion for directed verdict.

After Phillips testified and corroborated the events that took place the day in question —except for his testimony that someone else shot Collins—he moved for a directed verdict a second time. Again, the court denied the motion. The jury then retired to deliberate.

During the course of the jury deliberations in the guilt phase, the jury sent several written notes to the court. On October 29, 2013, the jury sent two notes, and the court brought the jurors into the courtroom to respond. The transcript, in part, reads as follows:

> THE COURT: Basically, what you have said, it really asks a question rather than – that was difficult for me to respond because the note that came said, "*If* we become a hung jury, what happens?" something to that effect. And there is no response I can give to that under the law.
>
> And then the second note indicated that you were split. But, now, a hung jury normally implies there is no more movement once you've gotten whatever it is that you have further negotiated to try to bring everybody together, and to whatever the decision is. But we need all 12, and there should be efforts to get all 12 to reach a decision, whatever that decision may be. And you—factually, in that situation, you are to tell me that you have reached an impasse and won't anybody move from where they are, and therefore, we have a hopeless situation. That wasn't exactly what I got. But I got enough, I thought, to bring you back in the courtroom, to this.
>
> And this is the way I can – the only way, under the law, I can answer your question is I'm going to read to you another instruction. First thing we would suggest is that you read those instructions and just remember your job there and then—be seated—be seated—that's Ms. Clegg (the foreperson), correct?
>
> [The Court then proceeded with the *Allen* instruction]

THE COURT: All right. Be seated, Ms. Clegg, the foreperson. Ladies and gentlemens [sic] of the jury, if you would give me your attention, I would read this instruction to you. It is in the interest of the state of Arkansas and of the defendant for you to reach an agreement in this case if at all possible. A hung jury means a continuation of the case and a delay in the administration of justice. You should consider that this case will have to be decided by some jury, in all probability upon the same testimony and evidence. It is unlikely that the case will ever be submitted to 12 people more intelligent, more impartial, or more competent to decide it. Under your oath as jurors, you have obligated yourselves to render verdicts in accordance with the law and the evidence. In your deliberation, you should weigh and discuss the evidence and make every reasonable effort to harmonize your individual views on the merits of the case. Each of you should give due consideration to the views and opinions of others. No juror should surrender his sincere beliefs in order to reach a verdict. To the contrary, this verdict should be the result of each juror's free and voluntary opinion. By what I have said as to the importance of the jury reaching a verdict, I do not intend to suggest or require that you surrender your conscientious convictions, only that each of you make every sincere effort to reach a proper verdict. Therefore, I request that the jury retire for further deliberations for a reasonable time in an attempt to reach a verdict.[2]

The jury continued deliberations, and at 5:44 p.m. on October 29, 2013, the court sent the jury home for the night and ordered them to return the next morning at 9:00 a.m. to deliberate further. Nothing in the record indicates that either side objected to the *Allen* instruction or to dismissing the jury on the evening of October 29.

On October 30, the jury returned, and the court reread all of the jury instructions—including the *Allen* instruction. Neither party objected to the rereading of the instructions. The jury began to deliberate at 9:52 a.m., had lunch from 12:00 p.m.–1:00 p.m., and returned a verdict of guilty of second-degree murder around 2:10 p.m. At 2:25 p.m.,

---

[2]Though the appellant does not argue this point on appeal, it is well settled that a trial court may give the *Allen* instruction rather than granting a mistrial. *Walker v. State*, 276 Ark. 434, 637 S.W.2d 528, *cert. denied*, 459 U.S. 975 (1982).

SLIP OPINION

appellant's counsel requested that the jury be excused so that he could make a record, outside of its presence, concerning other notes the jury had sent that morning. The jury was excused.

Appellant's counsel requested the court to specify the sequence of the notes that came in after the jury had started deliberations around 10:00 a.m. on October 30. The jury sent a total of five notes; it is uncontested that the trial court did not respond to any of them. Three notes were sent before the lunch break. The first note was sent around 10:32 a.m. or 10:34 a.m., and read "9- G, 2 – Not G, 1- Not Sure. We are done. Please proceed." The second note which was written and signed by one of the jurors read: "I voted not guilty. So do we need to stay in here, because I'm not going to change my mind." The third note, sent before the lunch break, was unsigned and read "Judge Jones, [...] is one of the jurors that has voted not guilty and she states that, 'she is not going to change her mind.'"

During the lunch break, a fourth note came back that read, "The jurors are requesting that you come in the room with us, that we can ask you some questions." The fifth and final note, signed by Ms. Clegg, the foreperson, was sent shortly after lunch, indicating that an aunt of one of the jurors had died and that juror needed to be excused. After receiving the last note, the trial court and both counsel agreed that the jury had probably reached an impasse. The court prepared to dismiss the jury following lunch and to declare a mistrial.

When the court sent the bailiff to retrieve the jury, the jurors instructed the bailiff to leave and indicated they were still deliberating. The court was prepared to declare a mistrial, as had been discussed with counsel in chambers. However, when the jury returned to the

courtroom, and the court inquired of the foreperson, Ms. Clegg, to confirm that the jury remained deadlocked, she responded that, in fact, a verdict of guilty had been reached.

Appellant admitted that he was not concerned about the two notes that came in during the lunch break, but argued that the jury should have been brought back out and counsel should have been notified at the time the court received the note from the juror stating that she voted not guilty and asking how much longer the jury had to "stay in here" because she was not going to change her mind. In his motion for a mistrial, appellant argued that the court should have notified the attorneys when it received the first three notes and allowed them an opportunity to discuss how to proceed. He also alleged that keeping the juror in the jury room another two and a half hours past the time she declared she had reached her decision of not guilty was improper and also resulted in her coercion.

The court denied the motion for a mistrial because, to the court's knowledge, there was no undue pressure because there were no outside influences imposed upon the jurors. The court further explained that there had not been any abuse of discretion and denied the motion. Counsel attempted to make one final point that the court should have notified the attorneys and addressed the note as soon as it was received. The court responded that the note was of no legitimacy because it had come from a juror rather than the foreperson; as such, it was not acceptable and was considered to be a "nonentity." The jury was polled, and all twelve responded "Yes sir" when asked by the court individually, "[Person's name], is this your well, true and just decision?"

This timely appeal follows. Phillips contends that the trial court abused its discretion

5

in failing to declare a mistrial on the grounds that the jury was deadlocked.

A mistrial is an extreme and drastic remedy which will be resorted to only when there has been an error so prejudicial that justice cannot be served by continuing the trial. *King v. State*, 298 Ark. 476, 769 S.W.2d 407 (1989). The decision whether to grant a new trial is left to the sound discretion of the trial judge and will not be reversed in the absence of an abuse of discretion or manifest prejudice to the complaining party. *Richmond v. State*, 302 Ark. 498, 501, 791 S.W.2d 691, 693 (1990). Our standard of review for appeals of an order denying a mistrial motion is well established, and a trial court's refusal to grant a mistrial is difficult to overcome. *Glenn v. State*, 2014 Ark. App. 642, 448 S.W.3d 228.

The appellant cites *Shaw v. State*, 304 Ark. 381, 802 S.W.2d 468 (1991), arguing "a deadlocked jury is an overruling necessity that compels the granting of a mistrial." Contrary to appellant's argument, however, *Shaw* does not mandate that a mistrial be declared in every case where the jury indicates it is deadlocked. Further, this argument fails in the instant case because the jury actually reached a verdict, after deliberating a total of only six to seven hours over the course of two days. Here, the jury was polled, and every juror agreed that the guilty verdict was in fact his or her verdict.

Appellant's arguments are based on nothing more than speculation, and they are not supported by the answers given during the polling of the jury, which confirmed the conclusive nature of the verdict. There is no evidence in the record to support the argument that any of the jurors were "worn down by the situation" or changed his or her vote as a result of the death of a juror's aunt. Similarly, there is no evidence to support the allegation

of coercion.

Further, there is no mechanical formula for determining when discharging the jury and declaring a mistrial is proper. *See Beard v. State*, 277 Ark. 35, 639 S.W.2d 52 (1982). Here, the jury ultimately reached a verdict; consequently, there was no reason for granting the motion for mistrial. The trial court has wide discretion in granting or denying a mistrial motion, and absent an abuse of that discretion, the trial court's decision will not be disturbed on appeal. *Burks v. State*, 2009 Ark. 598, 359 S.W.3d 402. Likewise, there is no manifest prejudice here. Having been given the *Allen* instruction on the first day of deliberations, which was reread the second day along with all the other instructions, the jury returned a unanimous verdict of guilty after no more than seven hours of deliberations. The trial court did not abuse its discretion by denying Phillips's motion for a mistrial. Accordingly, we affirm.

Affirmed.

GRUBER and HOOFMAN, JJ., agree.

*Potts Law Office*, by: *Gary W. Potts*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Valerie Glover Fortner*, Ass't Att'y Gen., for appellee.